GOVERNMENT OF THE CANAL ZONE,
Plaintiff-Appellee,

v.

Michael Gilmore SCOTT, Defendant-
Appellant.

No. 73-3628.

United States Court of Appeals,
Fifth Circuit.

Oct. 4, 1974.

Eric W. Schmidt, New York City (Court-appointed), Bruce C. Waltzer, New Orleans, La. (Court-appointed), Mark G. Murov, New Orleans, La., for defendant-appellant.

Lester Engler, U. S. Atty., Wallace D. Baldwin, Asst. U. S. Atty., Balboa, Canal Zone, for plaintiff-appellee.

Before WISDOM and CLARK, Circuit Judges, and GROOMS, District Judge.

WISDOM, Circuit Judge:

Michael Scott was convicted at a jury trial in the United States District Court for the District of the Canal Zone on two counts of knowingly or intentionally distributing cocaine, a controlled substance, in violation of 21 U.S.C. § 841(a)(1).[1] He appeals from that conviction on the theory that he was deprived of his Fifth Amendment right to a grand jury indictment[2] and that he was deprived of his right to an impartial jury in violation of both the Sixth Amendment to the United States Constitution[3] and the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 et seq. He also contends that the trial court erred in refusing to grant the jury's request to review the defendant's testimony during its deliberations at the close of the evidence. Finally, he alleges denial of due process and equal protection under the Fifth and Fourteenth Amendments because the judge who presided at his trial was not invested with tenure of office for good behavior. We find no merit to these contentions. We affirm.

## I.

First, Scott contends that the Government violated his Fifth Amendment right to answer for an infamous crime only after grand jury indictment in that the Government initiated his prosecution by information rather than by indictment. Scott recognizes that the Supreme Court has held that the Fifth Amendment right to presentment or indictment by a grand jury is inapplicable to the states through the Fourteenth Amendment. Hudgens v. Clark, 1964, D.Or., 218 F.Supp. 95, 96. Hurtado v. California, 1884, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232. He argues, however, that a citizen of the United States charged with a violation of a federal law in a United States court is constitution-

---

1. 21 U.S.C. § 841(a)(1) provides:
 (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

2. U.S.Const. Amend. V provides:
 No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

3. U.S.Const. Amend. VI provides:
 In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

ally entitled to the benefit of grand jury. This argument disregards the territorial status of the Canal Zone, as well as the special character of the United States courts sitting in the Canal Zone.

 The constitution does not require the extension of all protections of the bill of rights to territories governed by the United States. In Soto v. United States, 3 Cir. 1921, 273 F. 628, 633, the court held that indictment by a grand jury is "not among the fundamental rights which Congress in legislating for a territory not incorporated into the United States must secure to its inhabitants". Moreover, non-citizens and citizens of the United States resident in such territories are treated alike, since it is the territorial nature of the Canal Zone and not the citizenship of the defendant that is dispositive. Chief Justice Taft stated this principle as it applied to the right to jury trial in Balzac v. Porto Rico, 1922, 258 U.S. 298, 309, 42 S.Ct. 343, 347, 66 L.Ed. 627:

> The citizen of the United States living in Porto Rico cannot there enjoy a right of trial by jury under the federal Constitution, any more than the Porto Rican. It is the locality that is determinative of the application of the Constitution in such matters as judicial procedure, and not the status of the people who live in it.

This Court followed that analysis in Government of the Canal Zone v. Griffith, 5 Cir. 1972, 459 F.2d 1036:

> "Appellant's primary contention is that the Fifth Amendment require-

ment that infamous crimes be tried only upon grand jury indictment should be applied in the territory of the Canal Zone. We disagree. Article IV, § 3, of the Constitution empowers Congress to make 'all needful Rules and Regulations respecting the Territory . . .' of the United States. This constitutional provision has been specifically held to authorize Congress to dispense with grand jury indictments in the territories of the United States. See Rivera v. Government of Virgin Islands, 3 Cir., 1967, 375 F.2d 988, in which it was held that Congress could dispense with grand jury indictments in criminal trials in the territory of the Virgin Islands."

We find no compelling reason to depart from the Griffith rule.

## II.

 Scott's second issue is the contention that the exclusion of military personnel from jury duty violated his rights to an impartial jury under the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 et seq., as well as the Sixth Amendment to the United States Constitution.

The argument is ingenious but unconvincing. Scott argues that the specific exemption of military personnel from jury duty under 28 U.S.C. § 1863(b)(6) [4] is permissive rather than mandatory and that the United States District Court must be guided in the exercise of its discretion by the general language of 28 U.S.C. § 1861 [5] and §

---

4. Under 28 U.S.C. § 1863(b)(6), the District Court jury plan must:

 "specify those groups of persons or occupational classes whose members shall be barred from jury service on the ground that they are exempt. Such groups or classes shall be exempt only if the district court finds, and the plan states, that their exemption is in the public interest and would not be inconsistent with sections 1861 and 1862 of this title. The plan shall provide for exemption of the following persons: (i) members in active service in the Armed Forces of the United States; (ii) members of the fire or police

departments of any State, district, territory, possession, or subdivision thereof; (iii) public officers in the executive, legislative, or judicial branches of the Government of the United States, or any State, district, territory, or possession or subdivision thereof, who are actively engaged in the performance of official duties."

5. 28 U.S.C. § 1861 provides:

 It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the

1862.[6] Section 1861 declares that the general policy of the United States is to provide for all litigants a jury selected from a "fair cross section of the community". Section 1862 provides that no citizen should be excluded from jury service on account of race, color, religion, sex, national origin, or economic status.

We find this construction untenable in that the relevant language of Section 1863(b)(6) merely tracks the language of its predecessor section, 28 U.S.C. § 1862 (1966).[7] The earlier section was unambiguously mandatory in its exclusion of military personnel. The underlying rationale of the section was that members of such classes as military personnel were better left undisturbed at their usual occupations. The incorporation of old Section 1862 into the 1968 Act indicates a continued congressional belief in the desirability of excluding members of essential occupational classes from the obligation of jury service. More concretely, Scott's argument must fail because it is incompatible with the provision of Section 1863(b)(6) requiring that the jury selection plan "shall provide for exemption of . . . members in active service in the Armed Forces".

The appellant also argues that the exclusion of military personnel from jury duty violates his constitutional right to an impartial jury because it removes from eligibility one element of the community and thus prevents the jury from representing "a fair cross-section of the community". The mere exclusion of certain occupational classes for reasonable purposes is not constitutionally infirm. Justice Holmes stated the appropriate standard in Rawlins v. Georgia, 1906, 201 U.S. 638, 640, 26 S.Ct. 560, 561, 50 L.Ed. 899 (1906): certain occupations may be categorically excluded from jury duty on the "bona fide ground that it [is] for the good of the community that their regular work should not be interrupted". In Peters v. Kiff, 1972, 407 U.S. 493, 500, n. 10, 92 S.Ct. 2163, 33 L. Ed.2d 83, the Supreme Court noted the continuing vitality of this standard as a qualification on the "fair cross-section" principle. Because it is the "primary business of armies and navies to fight or be ready to fight wars should the occasion arise", Parker v. Levy, 1974, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439, 451, the exclusion of military personnel from jury duty is reasonable and for the good of the community under the *Rawlins* standard.

Finally, Scott argues that the exclusion of servicemen from jury duty in the Canal Zone deprived him of his right to an impartial jury because of the divergence in racial composition between the military contingent in the Canal Zone and the civilian population there. We do not reach the constitutional merits of that argument, however, because the record does not provide us with sufficient data for assessing its factual basis.

### III.

■■ The third issue raised on appeal here turns on the refusal of the

---

district or division wherein the court convenes. It is further the policy of the United States that all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States, and shall have an obligation to serve as jurors when summoned for that purpose.

6. 28 U.S.C. § 1862 provides:
No citizen shall be excluded from service as a grand or petit juror in the district courts of the United States on account of race, color, religion, sex, national origin, or economic status.

7. 28 U.S.C. § 1862 (1966) provides:
The following persons shall be exempt from jury service:
(1) Members in active service in the armed forces of the United States.
(2) Members of the Fire or Police departments of any State, District, Territory, Possession or subdivision thereof.
(3) Public officers in the executive, legislative or judicial branches of the government of the United States, or any State, District, Territory, or Possession or subdivision thereof who are actively engaged in the performance of official duties. June 25, 1948, c. 646, 62 Stat. 952.

trial court to grant the jury's request for a transcript of the defendant's testimony to consider during the course of its deliberations. This argument also fails. Broad discretion is placed in the trial court in deciding whether to provide the jury with the transcript of a particular witness's testimony or, alternatively, to have the witness's testimony read back to the jury at its request. United States v. Pollack, 2 Cir. 1973, 474 F.2d 828, 832, United States v. Braxton, 5 Cir. 1969, 417 F.2d 878, United States v. DePalma, 9 Cir. 1969, 414 F.2d 394, 396. Here the trial judge explained to the jury his reasons for denying the request for a transcript. He pointed out that furnishing a part of the transcript created the danger that the jurors might give undue weight to testimony which they would review isolated from its context. He also informed them that there would be some delay before such a transcript could be prepared by the reporter; the court does not keep a running up-to-date transcript of the testimony since it has only one court reporter who is engaged in the transcription of many cases.

We hold that the trial judge did not abuse his discretion in denying the jury's request for a transcript of the defendant's testimony.

### IV.

■■ Scott's final argument is that he was denied due process and equal protection of the laws in that his trial was presided over by a non-tenured judge sitting as a so-called "legislative" court rather than a "constitutional" (Article III) court.[8]

The appellant's argument is one that Congress might well consider. "If judicial independence is of vital importance in the states, it is hard to see why it is not equally valuable in the territories.

The district judges there try persons for crimes against the United States. They hear civil cases in which the United States is a party. They should be able to decide such cases fearlessly and impartially, without being dependent upon the Department of Justice for their continued tenure. . . . The granting to these judges of tenure during good behavior, as was recently done for Puerto Rico, would bring to an end the dubiously-conceived notion that courts of the United States can be other than 'constitutional.' " Wright, Law of Federal Courts, p. 34 (1970). That is not now the law. In Palmore v. United States, 1973, 411 U.S. 389, 407, 93 S.Ct. 1670, 1681, 36 L.Ed.2d 342, the Supreme Court rejected a similar argument:

> [N]either this Court not Congress has read the Constitution as requiring every federal question arising under the federal law, or even every criminal prosecution for violating an Act of Congress to be tried in an Art. III court before a judge enjoying lifetime tenure and protection against salary reduction.

See also United States v. Montanez, 2 Cir. 1967, 371 F.2d 79, cert. denied, 389 U.S. 884, 88 S.Ct. 147, 19 L.Ed.2d 181.

Congress decides the appropriate system of justice for territories. A system suitable for a territory that is a candidate for statehood may be inappropriate for an area under the jurisdiction of the United States by virtue of a treaty between this country and the Republic of Panama, a treaty that is at this point being renegotiated. As Justice Harlan wrote in Glidden v. Zdanok, 370 U.S. 530, 546–547, 82 S.Ct. 1459, 1471, 8 L.Ed.2d 671 (1962), "It would have been . . . dogmatic . . . to fasten on those [territorial] judges a guarantee of tenure that Congress could not put to use and the exigencies of the ter-

---

8. U.S.Const. Art. III, § 1 provides: "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation which shall not be diminished during their Continuance in Office."

ritories did not require." Scott's argument runs against the tide of a long line of authority beginning with Chief Justice Marshall's analysis in American Insurance Co. v. Canter, 1 Pet. 511, 7 L. Ed. 242 (U.S.1828). It must therefore be rejected.

The judgment of the district court is affirmed.