**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Richard A. SCHMITT,**
**Defendant-Appellant.**

**No. 84–3290.**

United States Court of Appeals,
Fifth Circuit.

Nov. 21, 1984.

John T. Mulvehill, Federal Public Defender, Brian P. Berson, Asst. Federal Public Defender, New Orleans, La. (Court-appointed), for defendant-appellant.

John P. Volz, U.S. Atty., Harry W. McSherry, Jr., Jan M. Maselli, Asst. U.S. Attys., New Orleans, La., for plaintiff-appellee.

Before RUBIN, RANDALL and TATE, Circuit Judges.

RANDALL, Circuit Judge:

Defendant-appellant Richard Schmitt appeals his conviction on two counts of unlawful receipt of a firearm by a person who had been convicted of a felony crime, a violation of 18 U.S.C. § 922(h)(1), and on two counts of knowingly making a false written statement to a licensed dealer in connection with the purchase of a firearm, a violation of 18 U.S.C. § 922(a)(6). Schmitt contends that the district court committed reversible error by declining to give his proposed instruction in its charge to the jury and by denying a jury request made during deliberations for a copy of the automatic pardon provision of the Louisiana Constitution. For the reasons set forth below, we affirm the judgment of the district court in regard to Schmitt's conviction on the § 922(h)(1) counts but reverse and remand for a new trial the court's judgment with respect to the § 922(a)(6) offenses.

## I. FACTUAL AND PROCEDURAL HISTORY.

On January 5, 1983, Schmitt purchased a .22 caliber revolver from Chalmette Jewelry, Inc., a federally licensed firearms dealer, in Chalmette, Louisiana. On January 27, 1983, Schmitt bought a second firearm, a .32 caliber revolver, from The Gun Shop, also a federally licensed firearms dealer, in the same city. In connection with both purchases, Schmitt, as required by law, completed and signed Bureau of Alcohol, Tobacco & Firearms Form 4473. This form included the following question:

Have you been convicted in any court of a crime punishable by imprisonment for a term exceeding one year? (Note: The actual sentence given by the judge does not matter—a yes answer is necessary if the judge could have given a sentence of more than one year. Also, a "yes" answer is required if a conviction has been discharged, set aside, or dismissed pursuant to an expungement or rehabilitation statute. However, a crime punishable by imprisonment for a term exceeding one year does not include a conviction which has been set aside under the Federal Youth Correction Act.)

Although Schmitt had been convicted in 1964 of armed robbery, a crime punishable by more than one year, he answered this question in the negative on both occasions.

On May 19, 1983, a federal grand jury indicted Schmitt on four counts arising from the gun purchases on January 5 and 27. Counts 1 and 3 charged Schmitt with

violating 28 U.S.C. § 922(h)(1),[1] which prohibits the knowing receipt of a firearm by a person who had been convicted of a crime punishable by more than one year. Counts 2 and 4 charged Schmitt with violating 18 U.S.C. § 922(a)(6),[2] which prohibits making false statements to a licensed firearms dealer with respect to any fact material to the lawfulness of the sale of the firearm. Schmitt pleaded not guilty to all four counts.

At trial, Schmitt stipulated that he in fact had been convicted of armed robbery in 1965 and had made the two firearm purchases on January 5 and 27 of 1983 from federally licensed gun dealers. It was also conceded that Schmitt had not filled out Form 4432 accurately in either instance. Schmitt, however, maintained his innocence on the ground that at the time of the purchases he lacked the scienter necessary as a precondition for the violation of the federal statutes. According to Schmitt, in January of 1983 he was under the mistaken but good faith belief that he had received the benefit of two pardons, the effect of which he presumed was to eviscerate his status as a felon under the law. Thus, at the time of the purchases, Schmitt alleges, he was not aware that he had a conviction on his record or that he was filling out the forms inaccurately.

Following a two-day trial, the jury found Schmitt guilty on all four counts. The district court sentenced Schmitt to five years' imprisonment as to each of counts 1, 2, and 3, the sentences to run concurrently. The court suspended sentence as to count 4 and instead placed Schmitt on five years' supervised probation to commence upon his release from prison. Schmitt filed a timely notice of appeal.

## II. DISCUSSION.

### A. Scienter and Counts 1 & 3.

Schmitt contends on appeal that the district court erred in refusing to give the requested instruction to the jury in regard to counts 1 and 3. The charge as submitted would have instructed the jury that scienter with respect to the defendant's status as a person convicted of a felony was a necessary precondition for violating § 922(h), which makes it unlawful for a person previously convicted of an offense punishable by imprisonment of more than one year to receive a firearm. Because we find that Schmitt's proposed instruction misstates the substantive law, we reject this contention as meritless. *See, e.g., United States v. Lewis,* 592 F.2d 1282, 1285 (5th Cir.1979); *United States v. Conroy,* 589 F.2d 1258, 1273 (5th Cir.), *cert. denied,* 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979).

1. 18 U.S.C. § 922(h) provides in pertinent part:
It shall be unlawful for any person—
(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
\* \* \* \* \* \*
to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
It is undisputed that both firearms involved here were transported in interstate commerce.

2. 18 U.S.C. § 922(a) provides in pertinent part:
(a) It shall be unlawful—
\* \* \* \* \* \*
(6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.
18 U.S.C. § 924(a) provides:
(a) Whoever violates any provision of this chapter or knowingly makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter, or in applying for any license or exemption or relief from disability under the provisions of this chapter, shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine.

Schmitt argues that, although on its face the statutory provision requires no specific intent or knowledge that the person receiving the firearm was a felon, the provision should be interpreted as including such a requirement. *See Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). We have previously held in *United States v. Giles*, 640 F.2d 621, 627 (5th Cir.1981), however, that "it is clear from both the wording of section 922(h) and the interpretive gloss placed on that wording by many courts that knowledge is not an element of the crime defined by that section." Moreover, even if we were not bound by a prior panel opinion in this matter, *see Ford v. United States*, 618 F.2d 357, 361 (5th Cir.1980), we would not be persuaded to adopt Schmitt's interpretation. It is well established that "there is wide latitude in the lawmaker to declare an offense and to exclude elements of knowledge and diligence from its definition." *Lambert v. California*, 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228 (1957). Thus, in *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), the Supreme Court, interpreting a closely analogous statutory provision, the National Firearms Act, 26 U.S.C. § 5861(d), held that scienter is not an element of the offense of unlawfully receiving unregistered firearms. In adopting such a construction, the Court emphasized that the prohibited act in that case, possession of hand grenades, was hardly innocent in itself and that the statute constituted a legitimate effort to regulate highly dangerous offensive weapons in the interests of public safety. *Id.* at 608–10, 91 S.Ct. at 1117–1118.

*See United States v. Balint*, 258 U.S. 250, 252–54, 42 S.Ct. 301, 302–303, 66 L.Ed. 604 (1922) (There are many instances of regulatory measures not requiring scienter for their violation "where the emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes as in cases of *mala in se.*"). In the case at hand, while the act at issue could conceivably be characterized as "innocent" inasmuch as gun purchases are both lawful and quite common, § 922(h), like § 5861(d), was clearly enacted in response to the need for regulation controlling the use of these objects which in and of themselves pose a danger to the general public. Indeed, the Supreme Court has commented that the purpose of § 922(h) is "broadly to keep firearms away from persons Congress classified as potentially irresponsible and dangerous. These persons are *comprehensively* barred by the Act from acquiring firearms by any means." *Barrett v. United States*, 423 U.S. 212, 218, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976) (emphasis added). *See also Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 119, 103 S.Ct. 986, 994–95, 74 L.Ed.2d 845 (1983) (Congress determined in enacting § 922(h)(1) "that firearms must be kept away from persons, such as those convicted of serious crimes."). Under these circumstances, we will not presume from congressional silence that Congress intended to make knowledge a prerequisite to violating the statutory provision.[3]

Accordingly, we hold that the district court acted properly in not granting Schmitt's request to give the jury the charge submitted.

---

**3.** In *United States v. Pruner*, 606 F.2d 871 (9th Cir.1979), the Ninth Circuit, considering the same issue presented here, stated:

> It may be true that the purchase of handguns in itself is an innocent act and that because of the innocence of the act there exists the possibility of injustice to one who purchases a gun, unaware that he had committed a crime that was punishable by a term of imprisonment exceeding one year. However, we believe that the potential for such injustice is outweighed by the danger created if guns are allowed to fall into the hands of dangerous persons such as felons.

*Id.* at 873–74. *See also United States v. Goodie*, 524 F.2d 515, 518 (5th Cir.1975) ("only knowledge of defendant that is a necessary element of the receiving crime [§ 1202(a) ] is that he knowingly received a firearm"), *cert. denied*, 425 U.S. 905, 96 S.Ct. 1497, 47 L.Ed.2d 755 (1976); *United States v. Ruisi*, 460 F.2d 153, 156–57 (2d Cir.) (scienter as a requirement of § 922(a)(1) will not be presumed since statute regulates dangerous objects and activities), *cert. denied*, 409 U.S. 914, 93 S.Ct. 234, 34 L.Ed.2d 176 (1972).

## B. Scienter and Counts 2 & 4.

Schmitt additionally asserts that the district court erred in refusing to give to the jury a submitted instruction regarding Schmitt's theory of defense to counts 2 and 4. These counts charged him with making false statements in the purchase of a firearm in violation of § 922(a)(6).[4] The proposed instruction read:

I shall now instruct you on what is called the defendant's theory of the case, that is, the view of the evidence taken in this case by Richard Schmitt.

I give you this view of the evidence without any implication of approval or disapproval.

Richard Schmitt contends that at the time he filled out the Alcohol, Tobacco and Firearms form and received the guns charged in the indictment, he was not aware that he had a conviction on his record.

We have recently held that, "[t]o establish a violation of § 922(a)(6), the government must show that the defendant knowingly made a false statement which was intended to deceive or likely to deceive the firearms dealer." *United States v. Harrelson*, 705 F.2d 733, 736 (5th Cir.1983). Thus, Schmitt's defense that he had only mistakenly filled out the relevant form and lacked any intention to deceive was legally sufficient under the law.

While the defendant is generally entitled to have the court instruct the jury on his "theory of the case," *United States v. Robinson*, 700 F.2d 205, 211 (5th Cir. 1983), "the refusal to adopt a defendant's proposal warrants reversal only where the charge, considered as a whole, does not accurately reflect the issues and the law of the case." *United States v. Fowler*, 735 F.2d 823, 829 (5th Cir.1984); *see also Har-*

*relson, supra*, at 736–37. The district court gave the following charge concerning Schmitt's defense to the jury:

There are three essential elements which must be proved beyond a reasonable doubt in order to establish the offense charged in Counts 2 and 4 of the indictment:

First: That the defendant acquired a firearm from a federally licensed firearms dealer as charged;

Second: That in so doing the defendant knowingly made a false written statement to the licensed firearm dealer that he had not been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;

Third: That the statement was likely to deceive the firearms dealer as to the lawfulness of the sale of the firearm to the defendant.

＊　　＊　　＊　　＊　　＊　　＊

Now, the defendant Richard Schmitt contends that at the time he filled out the Bureau of Alcohol, Tobacco and Firearms' form he was not aware that he had a conviction on his record.

Specific intent is not an essential element of this crime. The Government need only prove that the defendant imparted "false information" with the general intention of deceiving the dealer.

But actual knowledge by Richard Schmitt that he was making a false statement when he filled out the ATF form is an essential element of the offense charged. Therefore, you may not find Mr. Schmitt guilty of Counts 2 or 4 unless you find beyond a reasonable doubt that he knew that he was making a false statement.

---

**4.** The government on appeal urges us to apply the concurrent sentence doctrine to avoid reviewing Schmitt's conviction on counts 2 and 4. The district court, however, sentenced Schmitt on count 4 to supervised probation to commence when Schmitt is released from imprisonment, and Schmitt asserts the same grounds for reversing his conviction as to count 2 that he asserts in regard to count 4. Thus, because the existence of concurrent sentences is a prerequisite to the application of the concurrent sentence doctrine, it is unavailable to us in the instant case. *See United States v. Montemayor,* 703 F.2d 109, 114 (5th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *United States v. Rubin,* 591 F.2d 278, 281–82 (5th Cir.), *cert. denied,* 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979).

We find that these instructions more than adequately informed the jury of Schmitt's theory of defense. Adoption of Schmitt's proposed instruction would have only altered the charge as actually given by labeling a particular portion "the defendant's theory of the case." The district court did not commit reversible error in refusing to give to the jury an instruction worded exactly in accordance with Schmitt's preferences. *See United States v. Thetford,* 676 F.2d 170, 178 (5th Cir. 1982), *cert. denied,* 459 U.S. 1148, 103 S.Ct. 790, 74 L.Ed.2d 996 (1983).

### C. The Jury Request.

Schmitt finally contends that the district court abused its discretion in refusing to comply with the jury's request made during deliberations for a copy of article IV, section 5(E) of the Louisiana Constitution of 1974. Schmitt alleged at trial that this constitutional provision formed part of the basis for his belief that he was pardoned for his 1964 armed robbery offense. The section reads:

(E) Pardon, Commutation, Reprieve, and Remission; Board of Pardons.

(1) The governor may grant reprieves to persons convicted of offenses against

---

**5.** Schmitt concedes that he was never actually pardoned for his crime. The Louisiana courts have held that Louisiana Constitution art. IV, section 5(E), applies only prospectively. *See, e.g., State v. Harvey,* 329 So.2d 731 (La.1976).

**6.** The record reveals the following interplay:

MR. BERSON: Okay. Your Honor, at this time I ask that you take judicial notice of Article 4, Section 5 Part (e) of the Louisiana Constitution of 1974, what Mr. Schmitt has just read into the Record.

\* \* \* \* \* \*

MR. BERSON: Your Honor, you can take notice of any of the law that's on the books, but if I show you sufficient evidence to show that it is, in fact, a law, you know, it's undisputable if that is a provision of the Louisiana Constitution, now, if they're prepared to say that it isn't.

THE COURT: I have no evidence that this is a provision of the Louisiana Constitution.

MR. BERSON: Your Honor, I've shown you copies of that and I'll show you again, and I offered to bring the bound volumes in and Your Honor never said to me whether you preferred that or photocopies.

---

the state and, upon recommendation of the Board of Pardons, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses. However, a first offender never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor.[5]

Before the trial, Schmitt filed a motion in limine requesting the court to take judicial notice of certain unspecified Louisiana constitutional provisions. In his memorandum in support of the motion, Schmitt stated that at trial he would present to the court "bound volumes of the authoritatively published provisions or, if the court permits, photostatic copies of these provisions." Record, Vol. I, at 71. Inexplicably, the court never ruled on the motion.

At trial, defense counsel had Schmitt read the above constitutional provision from a photostatic copy and then requested the court to take judicial notice of the provision. The court refused on the ground that it had not been given the necessary predicate information.[6] Later in the trial,

---

THE COURT: It doesn't have anything to do with what I prefer, Mr. Berson. I think that if you want me to take judicial notice of something you better provide me with something that certifies that it's in existence now or it was in existence at some time. I have no earthly idea.

MR. BERSON: Okay. Well, we need a subpoena instanter. They won't let us take it out of the Fifth Circuit Library without an instanter subpoena, if that's what I'm required to show you.

MR. PETERS: I don't think getting a bound volume from the Fifth Circuit is going to certify that's the law of the State of Louisiana. I think it has to come from the Secretary of the State of Louisiana.

MR. BERSON: The matter is published by West Publishing under official authority by the state of Louisiana—officially under the official authority by the State of Louisiana.

THE COURT: I am not at this time going to take judicial notice of this. Now, if you want to get a bound volume and have this man read from a bound volume, that is your business. It is not my duty to tell you how to present the evidence in your case.

defense counsel, relying on bound volumes published by West Publishing Company, again asked the court to take judicial notice of the constitutional provision. This time, the court granted the request, stating simply that "[t]he court will take judicial notice of Article 4, Section 5(e) of the Louisiana Constitution of 1974." Record, Vol. III, at 163. During closing arguments, the constitutional provision was read to the jury for a second time.

After the court gave the jury its instructions, defense counsel asked the court to send copies of the constitutional provision to the jury room. The court denied this request on the ground that the provision had not been placed in evidence. Soon thereafter, during deliberations, the jury sent the court a note asserting that it "need[s] the article of the Constitution of 1974 discussed in court." The district court replied, "[y]ou are not entitled to see this." The reason given by the judge in chambers for this denial apparently was

that the judicial notice taken was not of the Louisiana constitutional provision but rather of the fact that the provision appeared in a book published by West Publishing Company. Record, Vol. III, at 266. Because Schmitt's good faith defense is relevant only to the offense of making false statements, we consider this point of error only with respect to Schmitt's convictions on counts 2 and 4.

 The laws of the fifty states are not foreign to the United States or to its courts. Thus, "[t]he law of any State of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, *without plea or proof.*" *Lamar v. Micou,* 114 U.S. 218, 223, 5 S.Ct. 857, 859, 29 L.Ed. 94 (1885) (emphasis added.). *See also Saffold v. McGraw-Edison Co.,* 566 F.2d 621, 623 (8th Cir.1977); *United States v. Guinn,* 454 F.2d 29, 38 (5th Cir.), *cert. denied,* 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685 (1972);

MR. BERSON: I need an instanter subpoena to get it out of the library.

THE COURT: I am not going to give you an instanter subpoena. I don't care where you get it from. You can go back in my offices and get the book, if you want to, I don't care, but you're going to show me that that particular provision has not been repealed, that it is in existence and it was in existence at the time or the date in question.

MR. BERSON: Your Honor, if I show you the book and I show you the 1984 pocket part that shows that it hasn't been repealed, will that be enough to satisfy you?

THE COURT: Well, you are going to have to show me that was on the books—when was the date in question?

MR. BERSON: 1974.

MR. BARNARD: It states at the bottom of the Act, Your Honor.

MR. PETERS: It's effective January 1st, 1975.

MR. BERSON: I think we can avoid all of this problem if you all would agree that that is the law that was in effect when he bought these guns, the constitutional provision. If not, I'm going to have to get a subpoena instanter and delay this trial.

MS. MASELLI: I don't understand what you're saying.

MR. BERSON: If there's no agreement, then, I'm going to have to go hunt down the bound volume and delay this trial.

MS. MASELLI: You do what you have to do, Mr. Berson. We won't agree to that, it's up to the Judge.

MR. BERSON: Let me say this, if you don't want to take judicial notice of it, under the circumstances, I'll have my client explain the relevancy of that article and I'll offer it into evidence and, you know, I prefer we argue it right now to see whether or not that's going to get into evidence. If not, I'm going to go and get the bound volume.

THE COURT: All I am saying is that the photostatic copy that you have given to me isn't sufficient, Mr. Berson. Now, if you're going to try to use the Louisiana Constitution, the acts of the Legislature and you want me to take judicial notice of it, you better come up with something better than a photostatic copy.

MR. BERSON: I submitted motions a week later where I stated definitely in that motion for you to tell me whether you wanted a copy or a bound volume and you never answered me on that. Now, you're putting me into a position that I'm going to have to delay this Court.

THE COURT: Mr. Berson, how long have you been practicing? All I am saying is I don't think it is up to the Judge to tell you how to present your case. Now, if you want to present sufficient evidence, then you better go about learning how to do it. I do not think a photostatic copy is sufficient evidence, as long as counsel does not agree.

Record, Vol. III, at 79–84.

*Schultz v. Tecumseh Products*, 310 F.2d 426, 433 (6th Cir.1962). The effect of taking judicial notice is "to relieve one of the parties to a controversy of the burden of resorting to the usual forms of evidence." *Ohio Bell Telephone Co. v. Public Utilities Commission*, 301 U.S. 292, 301–02, 57 S.Ct. 724, 729, 81 L.Ed. 1093 (1937); *see also* 21 C. Wright & K. Graham, Federal Practice and Procedure § 5111. A fact judicially noticed is, of course, before the jury.

We think it is clear that, regardless of the statement made at the end of the trial, the district court both was obligated and in fact did take judicial notice of article IV, section 5(E) of the Louisiana Constitution of 1974. In the relevant passage quoted above, the court declared without qualification that it was noticing the Louisiana provision. We must, however, also agree with the district court that the copies of the Louisiana provision were not technically in evidence. The district court took judicial notice of the constitutional provision itself, which was read to the jury twice in the course of the trial, not the bound volume published by West. Thus, the jury's request for the Louisiana constitutional provision in this case is analytically the equivalent of, and hence must be treated the same as, jury requests for transcripts of select testimony given at trial.

■ It is the firm rule in this Circuit that a trial judge has broad discretion in responding to the jury's request for the transcript of a particular witness' testimony and will only be reversed upon a finding of an abuse of discretion. *United States v. Rice*, 550 F.2d 1364, 1375 (5th Cir.), *cert. denied*, 434 U.S. 954, 98 S.Ct. 479, 54 L.Ed.2d 312 (1977); *Government of the Canal Zone v. Scott*, 502 F.2d 566, 570 (5th Cir.1974). Trial judges usually give two reasons for their refusal to comply with the jury request: (1) compliance would significantly delay the trial, and (2) furnishing only a part of the transcript would create a danger that the jurors might give that portion undue weight. *See e.g., United States v. Rice, supra*, at 1375 (jury's request was conceivably for over 2000 pages of transcript); *United States v. Morrow*, 537 F.2d 120, 148 (5th Cir.1976) (portion of transcript requested exceeded 300 pages in length and would have taken jury a day or more to read; requested portion represented only small part of testimony given in six-week trial), *cert. denied*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977); *Government of the Canal Zone, supra*, at 570 (transcript of only defendant's testimony would have created danger that juror might give it undue weight).

■ In the case at hand, however, neither reason justifies the district court's absolute refusal to comply with the jury request in any manner. Providing the jury with the Louisiana Constitution or reading the relevant constitutional provision to the jury would not have lengthened the trial in any significant degree. Nor would have furnishing the jury with the provision created much of a danger of undue emphasis. The provision was an integral part of Schmitt's single theory of defense; presumably, the jury needed it to help resolve doubts about Schmitt's credibility in claiming he had made an innocent mistake. *See United States v. Rabb*, 453 F.2d 1012 (3d Cir.1971) (finding abuse of discretion where requested testimony presumably was needed to resolve disagreement concerning its proper evaluation). This is simply not a case in which compliance with the jury request would have caused the jury to focus its attention on only a small or relatively insignificant portion of the evidence presented at trial, thereby creating a danger that a significant portion of the evidence would have been ignored. Thus, in light of the importance of the requested constitutional provision to Schmitt's theory of the case, the lack of delay compliance would have entailed, and the complete absence of justification for withholding the requested information, we find that the district court abused its discretion in denying the jury's request.[7] We therefore va-

---

7. We note additionally that the district court's action could be read as a failure to exercise

cate Schmitt's conviction as to counts 2 and 4 and remand for a new trial.

## III. CONCLUSION.

We affirm Schmitt's conviction as to counts 1 and 3. Because the district court abused its discretion in refusing to comply with the jury's request, however, we vacate Schmitt's conviction as to counts 2 and 4 and remand for a new trial on those counts.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

· discretion in the first instance. The trial judge apparently determined not to comply with the jury request based on the belief that the Louisiana constitutional provision could not as a matter of law be sent to the jury room since the provision had not been judicially noticed or put into evidence.