UNITED STATES of America, Plaintiff-Appellee,

v.

Nelda Karen COLWELL, Defendant-Appellant.

No. 84–2538 (Summary Calendar).

United States Court of Appeals, Fifth Circuit.

June 24, 1985.

Sharon Trigo, Laredo, Tex., for defendant-appellant.

Daniel K. Hedges, U.S. Atty., James R. Gough, Susan Yarborough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before REAVLEY, POLITZ and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

Convicted of conspiracy to bring undocumented Mexican mothers and their Mexican-born infants into the United States, in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324(a)(1), and of aiding and abetting the unlawful procurement of false birth documents, contrary to 18 U.S.C. §§ 2 and 1425(a), Nelda Karen Colwell appeals, contending that the evidence was insufficient to support the convictions. Finding this challenge to be without merit, we affirm.

*Facts*

Colwell and her friend Sandy Green each adopted a Mexican infant and then became involved in locating Mexican children for prospective adoptive parents. They were successful in their efforts and approximately 70 babies were adopted. Colwell and Green typically located the infants, informed the adoptive parents who would adopt the children in Mexico and then legally return to the United States. The delays and red tape apparently proved too much because the modus operandi changed, at least in the instances recounted in the indictment. Under the modified, illegal procedure, the Mexican mother and child were brought into the United States without documentation. Thereafter the services of a midwife were retained and the midwife prepared false birth registration papers. With this birth registration the child was subject to adoption in any court of competent jurisdiction.

The government's case rested primarily on the testimony of San Juana Martinez-Lopez, a Mexican national who assisted Colwell in locating several infants. At least two involved illegal activity. In the first such instance, Cida Resendez gave birth to a girl in Nuevo Laredo, Mexico and wished to place her for adoption. Martinez notified Colwell who told Martinez to "cross the baby into Texas," contact a midwife and have the infant's birth registered as if she were born in the United States. Colwell made all logistical and financial arrangements for the parties. The mother and child were brought into the United States without appropriate documentation and false birth papers were prepared for the infant. The adoptive parents subsequently arrived in Laredo, Texas, met Martinez under the golden McDonald arch, and took possession of the baby.

The second case involved a baby boy. The scenario was the same. Colwell made all arrangements and telephoned Martinez and told her to "cross the baby and go ahead and talk to the midwife." The boy came in undocumented, the same midwife was contacted, and false birth registration papers were prepared. Delivery of the child to the adoptive parents took place at a Laredo hotel.

### Analysis

On appeal our review is limited to a determination of whether "the evidence is sufficient to justify the trial judge, as trier of the facts, in concluding beyond a reasonable doubt that the defendant was guilty." *United States v. Jennings*, 726 F.2d 189, 190 (5th Cir.1984), *quoting Gordon v. United States*, 438 F.2d 858 (5th Cir.1971).

### The Conspiracy

■ A conspiracy is an agreement between two or more persons to commit an unlawful act. "The essential elements of the offense of conspiracy are an agreement between two or more persons to commit a crime and an overt act by one of them in furtherance of the agreement." *United States v. Graves*, 669 F.2d 964, 969 (5th Cir.1982). To sustain a conspiracy conviction, the government must establish that a conspiracy existed, that the accused knew of the conspiracy, intended to join it and voluntarily did so. *United States v. Avila-Dominguez*, 610 F.2d 1266 (5th Cir.1980). The government also must establish that the accused possessed the same degree of criminal intent necessary for the underlying substantive offense. *United States v. Nelson*, 733 F.2d 364 (5th Cir.1984). In this case the substantive offense was the bringing of an alien into the United States unlawfully, in violation of 8 U.S.C. § 1324(a)(1).

■ Martinez's testimony, considered in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), provides the essential basis for the conspiracy conviction. The judge was entitled to credit her testimony. From that testimony, and

reasonable inferences logically drawn therefrom, it appears that Colwell initiated, or at least encouraged, the idea of the illegal entry of the children and the false registration of their births. This is the essence of conspiracy. The overt acts in furtherance of the conspiracy are apparent.

### Aiding and Abetting

■ A conviction for aiding and abetting under 18 U.S.C. § 2(a) requires the government to establish that the defendant became associated with a criminal venture and participated in it. *United States v. Longoria*, 569 F.2d 422 (5th Cir.1978). Association means that the defendant shared in the criminal intent of the principal. Participation means that the defendant engaged in some affirmative conduct designed to aid the venture. The substantive offense that Colwell was accused of aiding and abetting was the procurement, contrary to law, of evidence of citizenship. 18 U.S.C. § 1425(a).

■ Once again, Martinez's testimony, viewed in the light most favorable to the government, supports Colwell's conviction. Her testimony established Colwell's intention that the children be illegally registered in the United States. Colwell instructed Martinez in the accomplishment of that goal and there was credible evidence that Colwell handled the arrangements and finances, including payment of the midwife for her illegal services.

■ Colwell contends that her discussions with Martinez should be viewed in light of her discussions with Sandy Green about legal adoptions in Mexico followed by legal immigration. This involved a question of credibility, the grist for the mill of the trier of fact. The court obviously was not impressed by this explanation. Further, an alternative hypothesis of innocence is inadequate grounds for reversal of a conviction. *United States v. Bell*, 678 F.2d 547 (5th Cir.1982) (en banc).

Finding sufficient evidence to support the convictions, they are AFFIRMED.