**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jose Salvador ORTIZ–LOYA, Angel Ojeda-Avila and Jesus A. Garcia, Defendant-Appellants.**

**No. 85–1045.**

United States Court of Appeals, Fifth Circuit.

Dec. 2, 1985.

---

Jesus B. Ochoa, El Paso, Tex., for Ortiz-Loya.

Scott E. Segall, El Paso, Tex., for Garcia.

Pablo Alvarado, El Paso, Tex. (court appointed), for Angel Ojeda-Avila.

Sidney Powell, Michael S. McDonald, Asst. U.S. Attys., San Antonio, Tex., Helen M. Eversberg, U.S. Atty., El Paso, Tex., William J. Landers, Sp. Counsel, Washington, D.C., for plaintiff-appellee.

Before GARZA, POLITZ, and ROBERT MADDEN HILL, Circuit Judges.

GARZA, Circuit Judge:

Jose Salvador Ortiz-Loya, Angel Ojeda-Avila and Jesus A. Garcia were charged in a superseding indictment with various counts of conspiracy, attempting to export firearms and ammunition without a license and making false statements in the acquisition of firearms. The government's case rested primarily on the testimony of Eduar-

do Hernandez. Hernandez, the manager of a licensed firearms dealership in El Paso, Texas, was not prosecuted for his involvement in the case. The salient facts, most of which were highly disputed at trial, are as follows.

Ortiz-Loya, a resident alien living in El Paso, travelled to Mexico on business prior to May, 1984, and there left his briefcase, which contained his Texas driver's license. Upon returning to El Paso, Ortiz-Loya learned that he had been named to head an anti-narcotics agency investigating drug trafficking in Mexico. Ortiz-Loya was already a federal agent for the Mexican government.

Ortiz-Loya testified that the Mexican government did not provide him with weapons and that he told Garcia that he would need a "long weapon" for his new job. According to Garcia, Ortiz-Loya never mentioned that he intended to take any weapons to Mexico. In May of 1984, Garcia took Ortiz-Loya to the Montana Pawn Shop and pawnbroker/gun dealer Hernandez. Ortiz-Loya also testified that guns and jewelry were discussed, but that no order was placed. Hernandez, however, testified that guns were not discussed at this first meeting.

According to Ortiz-Loya, he returned to the pawnshop alone approximately one week later and asked Hernandez about ordering guns and ammunition. Hernandez stated that he could sell Ortiz-Loya the ammunition, but that he would need two persons with Texas driver's licenses to sign for the guns. Ortiz-Loya further testified that he told Hernandez that he wished to take the guns to Mexico and asked Hernandez about exportation requirements. Ortiz-Loya claimed that Hernandez reiterated that only two persons with Texas driver's licenses to co-sign were needed. According to Ortiz-Loya, this "seemed too easy," since he had previously exported non-hazardous items to Mexico and knew that certain export requirements had to be met. Ortiz-

Loya stated that he then placed an order for two Colt AR–15 semiautomatic rifles, two Uzi carbines and ammunition; that he gave Hernandez $3,000 in cash; and that he received a receipt for a balance due of $182.95.

Hernandez, on the other hand, testified that, although Ortiz-Loya did ask if such weapons could be ordered, no order was placed during this second visit. According to Hernandez, it was not until some days later, when Ortiz-Loya arrived with Ojeda-Avila, that Ojeda-Avila placed an order for the guns. Hernandez stated that Ojeda-Avila gave him $3,000 and told him to make a layaway ticket in Ortiz-Loya's name in order to guarantee payment of a debt owed to Ortiz-Loya.

Approximately ten days later, Hernandez learned that the two Uzi carbines could not be ordered. Ortiz-Loya testified that after Hernandez called to tell him this, arrangements were made for his son, acquitted co-defendant Ortiz-Gutierrez, to collect the overpayment of approximately $1,000. By contrast, Hernandez claimed that he had informed Ojeda-Avila that two of the guns could not be ordered and that arrangements were made for either Ojeda-Avila or a third person to collect the overpayment. Hernandez further stated that Ortiz-Loya came to the pawn shop to collect the $1,000, but that the pawn shop did not have that much cash. Hernandez agreed that Ortiz-Gutierrez subsequently collected the money.

A few days later, Hernandez informed Ortiz-Loya that the balance of the order had arrived. Hernandez testified that on the morning of June 12, 1984, Ojeda-Avila arrived at the pawnshop with a check, drawn on "Ortiz Motors" (the family used car business), for approximately $500; Hernandez accepted the check and returned approximately $315 to Ojeda-Avila. According to Hernandez, Ojeda-Avila signed only one Alcohol, Tobacco and Firearms (ATF) form,[1] which indicated that Ojeda-

---

**1.** The Alcohol, Tobacco and Firearms Division of the United States Treasury Department requires purchasers and sellers of firearms to

complete ATF Form 4473 in order to determine the eligibility of the buyer (transferee) to re-

Avila was the transferee or purchaser, because Ojeda-Avila stated that only one weapon was his. Ojeda-Avila did not take any weapon when he left the store.

While Hernandez could not recall if Ojeda-Avila was alone, Ortiz-Loya and Ojeda-Avila both testified that Ortiz-Loya was present. Both men also testified that Ortiz-Loya had earlier asked Ojeda-Avila, as a favor, to sign for one of the weapons because Ojeda-Avila had a Texas driver's license. According to Ojeda-Avila, Hernandez knew the gun was being purchased for Ortiz-Loya and twice said that there would be "no problem" in having Ojeda-Avila sign for one of the weapons.

Later that day, Ortiz-Loya returned to the pawnshop with Ana Nunez. Ortiz-Loya testified that he purchased a .22-caliber pistol and ammunition for Nunez, but that payment was not made at this time. Ortiz-Loya claimed that later that day he and Garcia returned to the pawnshop, where Garcia signed a separate ATF form for the remaining AR–15 rifle. Garcia testified that Ortiz-Loya had asked him to sign for the gun because he had a Texas driver's license. Ortiz-Loya also testified that he handed Hernandez a check, drawn on Ortiz Motors, in the sum of $557.64. According to Ortiz-Loya, this check, which Ortiz-Gutierrez had signed, covered the balance due on the remaining AR–15 and the $374.69 owed on the Nunez pistol and ammunition.

Hernandez, on the other hand, testified that Nunez paid for the .22 caliber pistol and ammunition and that she filled out an ATF form. Hernandez further testified that when Ortiz-Loya arrived with Garcia, Garcia filled out two ATF forms: one for the remaining AR–15, which Ojeda-Avila had purchased, and one for a separate shotgun, which Garcia had purchased for himself. When Ortiz-Loya and Garcia left the pawnshop, Garcia took the shotgun, but left the AR–15 rifle.

All parties agree that on the following day, June 13, 1984, Ortiz-Gutierrez went to the pawnshop and collected the guns and ammunition. According to Hernandez, Ortiz-Gutierrez had said that Ojeda-Avila and Garcia could not leave work and that he was going to collect the merchandise. After Hernandez delivered the items, Ortiz-Gutierrez loaded the weapons and ammunition into the trunk of his car and drove to the family business. At the used car lot, empty soft-drink cartons were placed in the trunk over the guns and ammunition; Ortiz-Loya claimed that the boxes were not placed to conceal the weapons. Ortiz-Loya and Ortiz-Gutierrez then drove to the United States-Mexican border at the "Bridge of the Americas," where the United States Customs Office was located. Ortiz-Loya testified that he intended to get information concerning exportation requirements for the guns and ammunition.

Customs Patrol Officer Santillano, after a phone call from the Customs Office of Investigation, set up a roadblock at the Bridge of the Americas in order to stop Ortiz-Loya's car. Santillano testified that Ortiz-Loya's car was spotted in the center lane and that the car began to back up after Santillano had made eye contact with the driver. Santillano further testified that Ortiz-Loya's car was stopped at a point at which it had not yet irrevocably committed to enter Mexico.

Customs Special Agents Walker and Barela arrested Ortiz-Loya and Ortiz-Gutierrez, inspected the trunk, and removed the guns and ammunition. According to Agent Walker, Ortiz-Loya had committed to enter Mexico before he was stopped. ATF Agent Valdez then questioned Ortiz-Loya. According to Valdez, Ortiz-Loya stated that he was a Mexican federal police officer; that he was taking the firearms to Mexico for police purposes; that he did not need permission to "exportar"—*i.e.* to take the firearms and ammunition across the border—because he was a Mexican federal agent; and that although he paid for the firearms, two other individuals had signed for them.

By contrast, Ortiz-Loya testified that he neither intended to enter Mexico nor at-

ceive firearms under Federal law. *See* Appen- dix.

tempted to put his car in reverse. He further testified that he never told Valdez that he did not need a permit to export the weapons to Mexico, but that, in fact, he understood Valdez to ask him if he needed a permit to "aportar," which means to carry or bear arms. Ortiz-Loya claimed that he did not need such a permit because his Mexican federal police credentials allowed him to bear arms. Ortiz-Loya did concede that if he would have met the customs requirements, he might have taken the weapons to Mexico that day.

Based on the foregoing testimony, Ortiz-Loya, Ojeda-Avila, and Garcia were convicted of several offenses from which they now appeal. Specifically, Ortiz-Loya appeals his conviction on counts 2 through 8 of unlawfully attempting to export two firearms and approximately 6,000 rounds of ammunition from the United States to Mexico without a license.[2] Ojeda-Avila and Garcia appeal their convictions on counts 2 and 3, respectively, of aiding and abetting Ortiz-Loya in the attempted unlawful exportation[3] and their convictions on counts 9 and 10, respectively, of knowingly making false statements to a licensed gun dealer in the acquisition of the firearms.[4] Ortiz-Loya also appeals his conviction on counts 9 and 10 of aiding and abetting Ojeda-Avila and Garcia in the unlawful acquisition.[5] All defendants appeal their convictions on count 1 of conspiracy in attempting to export firearms and ammunition without a

2. 22 U.S.C. § 2778 reads in pertinent part:

(a) ... (1) In furtherance of world peace and the security and foreign policy of the United States, the President is authorized to control the import and the export of defense articles and defense services and to provide foreign policy guidance to persons of the United States involved in the export and import of such articles and services. The President is authorized to designate those items which shall be considered as defense articles and defense services for the purposes of this section and to promulgate regulations for the import and export of such articles and services. The items so designated shall constitute the United States Munitions List....

(b)(2) Except as otherwise specifically provided in regulations issued under subsection (a)(1), no defense articles or defense services designated by the President under subsection (a)(1) may be exported or imported without a license for such export or import, issued in accordance with this Act and regulations issued under this Act....

(c) ... Any person who willfully violates any provision of this Section ... shall upon conviction be fined not more than $100,000, or imprisoned not more than two years, or both.

22 C.F.R. § 121.1 provides in pertinent part:
General. The United States Munitions List.
(a) The following articles, services and related technical data are designated as defense articles and defense services pursuant to sections 38 and 47(7) of the Arms Export Control Act (22 U.S.C. 2778 and 2794(7)).
CATEGORY I—FIREARMS
(a) Nonautomatic, semi-automatic and fully automatic firearms to caliber .50 inclusive, and all components and parts for such firearms.

CATEGORY III—AMMUNITION
(a) Ammunition for the arms in Categories I and II of this section.

3. 18 U.S.C. § 2 provides that:
(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

4. 18 U.S.C. § 922(a)(6) provides that: [It shall be unlawful]
(6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish to exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.
18 U.S.C. § 924(a) provides in pertinent part:
Whoever violates any provision of this chapter or knowingly makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter shall be fined not more than $5,000 or imprisoned not more than five years, or both.

. . . . .

5. See footnote 3, supra.

license and in making false statements in the acquisition of firearms.[6]

The defendants contend that there is insufficient evidence to support any of the foregoing convictions. Ortiz-Loya and Garcia also argue that the trial court's instructions to the jury were erroneous in two respects. Finally, Garcia asserts that ATF Form 4473 is unconstitutional under the Fifth Amendment. We address the defendants' contentions *ad seriatim*.

## I. Sufficiency of the Evidence

*Standard of review.*

It is well settled that an appellate court must review the sufficiency of the evidence and the inferences that may be drawn from it in the light most favorable to the jury's verdict. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Steinfels*, 753 F.2d 373, 377 (5th Cir.1985). It is the sole province of the jury to weigh the evidence and to determine the credibility of the witnesses. *United States v. Davis*, 752 F.2d 963, 968 (5th Cir.1985).

Thus, in reviewing each of the defendants' convictions, we must, taking the view most favorable to the government, determine whether a reasonably-minded jury could accept the relevant evidence as adequate and sufficient to support the conclusion that the defendants were guilty beyond a reasonable doubt. *See United States v. Warner*, 441 F.2d 821, 825 (5th Cir.) *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971). If we find that reasonable minds could conclude that the evidence is inconsistent with the defendants' hypothesis of innocence, then we must affirm the convictions. *United States v. Wieschenberg*, 604 F.2d 326, 330 (5th Cir. 1979).

## A. *Acquisition of the Firearms*

■ In order to establish a violation of 18 U.S.C. § 922(a)(6), the government must show that the defendants knowingly made false statements and that such statements were intended to deceive or likely to deceive a federally licensed firearms dealer with respect to any fact material to the lawfulness of the sale. *United States v. Schmitt*, 748 F.2d 249, 253 (5th Cir.1984); *United States v. Harrelson*, 705 F.2d 733, 736 (5th Cir.1983).

■ Ojeda-Avila and Garcia do not dispute that the Montana Pawn Shop was a federally licensed firearms dealer. Moreover, neither defendant denies signing the ATF form as the purchaser when, in fact, Ortiz-Loya was the true purchaser of the weapons. Such misstatements were clearly misrepresentations of material facts. *See United States v. Buck*, 548 F.2d 871, 876 (9th Cir.), *cert. denied*, 434 U.S. 890, 98 S.Ct. 263, 54 L.Ed.2d 175 (1977). Accordingly, the only question remaining is whether the false statements either (1) were given with the intent to deceive Hernandez or (2) were "likely to deceive" Hernandez.

While we agree with Ojeda-Avila and Garcia that there is much evidence to support the conclusion that they did not intend to deceive Hernandez and that Hernandez knew that Ortiz-Loya was the true purchaser, the evidence, viewed in the light most favorable to the government, is sufficient for the jury to conclude otherwise. Hernandez testified that Ojeda-Avila ordered and paid for the weapons; that the receipt for payment was made out in Ortiz-Loya's name only as security for a loan; that Ojeda-Avila, not Ortiz-Loya, called to verify that the order had been placed and was informed that not all weapons could be obtained; that Ojeda-Avila told Hernandez that he or someone else would pick up a refund for the unavailable weapons; that Ojeda-Avila paid the balance of the purchase price when the weapons arrived and filled out an ATF form stating that he was the purchaser of one firearm; that Garcia

---

**6.** 18 U.S.C. § 371 reads in pertinent part:
 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

filled out the other ATF form; and that Ortiz-Gutierrez collected the weapons and ammunition on behalf of Ojeda-Avila and Garcia. It is apparent that the jury believed Hernandez and rejected the defendants' testimony. The resolution of the credibility of witnesses is a matter for the jury and must not be disturbed upon review. *See United States v. Chancey*, 715 F.2d 543, 546 (11th Cir.1983); *Wieschenberg*, 604 F.2d at 330. We conclude, therefore, that Ojeda-Avila and Garcia's convictions for making false statements in the acquisition of firearms and ammunition, in violation of 18 U.S.C. § 922(a)(6), must be affirmed.[7]

B. *Attempted Exportation of the Firearms*

■■■ A conviction under 22 U.S.C. § 2778 requires the government to prove beyond a reasonable doubt that the defendant, here, Ortiz-Loya, knowingly and wilfully exported or attempted to export articles designated on the United States Munitions List without a license. *See United States v. Beck*, 615 F.2d 441, 449–50 (7th Cir. 1980); *United States v. Davis*, 583 F.2d 190, 193 (5th Cir.1978); *United States v. Lizarraga-Lizarraga*, 541 F.2d 826 (9th Cir.1976). Ortiz-Loya argues that the evidence is insufficient to establish that he was attempting to go to Mexico when he was stopped. Moreover, he contends that because Officer Santillano testified that he had not yet irrevocably committed himself to cross the border, *i.e.* that he had not yet crossed a "point of no return," he could not have been found guilty of attempted exportation. We disagree.

■■ It is not necessary to reach a point of irrevocable commitment in order to be convicted of attempted exportation in violation of 22 U.S.C. § 2778. *See Samora v. United States*, 406 F.2d 1095, 1096 (5th Cir.1969) (defendant convicted of unlawful attempted exportation of firearms was ar-

rested "within a few feet of the actual exit to Mexico"). Moreover, although the testimony is contradictory, we find that the jury could have found, beyond a reasonable doubt, that Ortiz-Loya was attempting to unlawfully export items designated on the United States Munitions List without first having obtained a license for the export. The evidence shows that Ortiz-Loya placed the firearms and ammunition in his trunk and covered them with empty soft drink cartons; that he was stopped in the center lane; that when he saw officer Santillano approach his car he attempted to put the car in reverse; that at least one agent believed he had committed himself to enter Mexico when he was stopped; that he told Agent Valdez that he did not need permission to export weapons; and that, if he would have met the customs requirements, he would have taken the guns to Mexico that day. Taken together, the evidence is sufficient to support the jury's finding that Ortiz-Loya did attempt to unlawfully export the firearms and ammunition. Accordingly, his conviction in this regard should be affirmed.

C. *Aiding and Abetting*

■■ A conviction for aiding and abetting under 18 U.S.C. § 2(a) requires the government to establish that the defendant wilfully associated himself in some way with the criminal venture and wilfully participated in it as he would in something he wished to bring about. *United States v. Fischel*, 686 F.2d 1082, 1087 (5th Cir.1982). "Association means that the defendant shared in the criminal intent of the principal. Participation means that the defendant engaged in some affirmative conduct designed to aid the venture." *United States v. Colwell*, 764 F.2d 1070, 1072 (5th Cir.1985). *See United States v. Westbo*, 746 F.2d 1022, 1025 (5th Cir.1984). Thus, Ortiz-Loya can be convicted of aiding and abetting only if

---

7. Although the district court's final judgment specifies only convictions for 18 U.S.C. § 922(a)(6), we would note that the superseding indictment in this case also charged Ojeda-Avila and Garcia in counts 9 and 10, respectively,

with violating 18 U.S.C. § 924(a). Because the government does not address this point in its brief, we have limited our discussion to § 922(a)(6).

he assisted Ojeda-Avila and Garcia in the falsification of the ATF forms while sharing in their intent. *Colwell,* 764 F.2d at 1072.

■ Viewed in the light most favorable to the government, the evidence at trial is sufficient to support the conclusion that Ortiz-Loya did aid and abet Ojeda-Avila and Garcia. The evidence indicates that Ortiz-Loya was not only a party to the agreement to make false statements in the acquisition of the firearms, he was, in fact, the instigating figure behind the entire transaction. It was Ortiz-Loya who provided the money to purchase the firearms and the ammunition; who asked Ojeda-Avila and Garcia to accompany him to the Montana Pawn Shop in order to sign the ATF forms; who ordered that the guns be picked up, and who carried them to the border. Consequently, Ortiz-Loya's conviction for aiding and abetting in the falsification of the ATF forms must be affirmed. *See United States v. Newman,* 628 F.2d 362 at 366 (5th Cir.1980).

■ However, we conclude that Ojeda-Avila and Garcia's convictions, under 18 U.S.C. § 2(a), of aiding and abetting Ortiz-Loya in the attempted unlawful exportation cannot stand. There is absolutely no evidence from which one may reasonably conclude that Ojeda-Avila even knew that Ortiz-Loya intended to export firearms and ammunition to Mexico, much less that he intended to export them without having first obtained proper authorization. The only evidence that may conceivably suggest that Garcia knew that the guns were to go to Mexico was Ortiz-Loya's testimony that he told Garcia that he needed a "long weapon" for his work in Mexico. This however, is an insufficient basis to infer that Garcia "associated himself" with the attempted exportation. *See Colwell, supra.*

The government argues, however, that assisting the principal in acquiring a weapon that is to be exported without a license is sufficient to sustain a conviction for aiding and abetting. The government's argument overlooks the requirement that the defendant share in the principal's criminal intent. *See Colwell,* 764 F.2d at 1072. Because we find this element absent, Ojeda-Avila and Garcia's convictions of aiding and abetting Ortiz-Loya in the attempted exportation must be reversed.

### D. *Conspiracy*

■ A conviction for conspiracy under 18 U.S.C. § 371 requires that the government prove beyond a reasonable doubt (1) an agreement between two or more persons, (2) to commit a crime, and (3) an overt act committed by one of the conspirators in furtherance of the agreement. *United States v. Saenz,* 747 F.2d 930, 937 (5th Cir.1984). *United States v. Lyons,* 703 F.2d 815, 822 (5th Cir.1983). Moreover, "in order to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the Government must prove at least the degree of criminal intent necessary for the substantive offense itself." *United States v. Feola,* 420 U.S. 671, 686, 95 S.Ct. 1255, 1265, 43 L.Ed.2d 541 (1975); *United States v. Wieschenberg,* 604 F.2d at 331.

In the case at bar, each of the defendants were charged with conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371. As part of this single conspiracy, the defendants were charged as having conspired to export firearms and ammunition without a license, in violation of 22 U.S.C. § 2778, and as having conspired to acquire firearms and ammunition through knowingly giving false written statements to a licensed firearms dealer, in violation of 18 U.S.C. §§ 922(a)(6), 924(a).

■ We cannot conclude that the evidence, even if viewed in the light most favorable to the government, is sufficient to support a finding that the defendants conspired to export firearms and ammunition without a license. As discussed earlier, the record is barren of any indication that either Ojeda-Avila or Garcia was aware that Ortiz-Loya intended to export weapons in violation of 22 U.S.C. § 2778.

It follows that they could not possibly have *agreed* with Ortiz-Loya to export the weapons without the proper authorization. *See Wieschenberg,* 604 F.2d at 331. Once again, Ortiz-Loya's testimony that he told Garcia that he needed a "long weapon" for his job in Mexico does not reveal that Garcia was a willing participant in a conspiracy to illegally export the firearms and ammunition to Mexico.

■ Nevertheless, we conclude that the evidence is sufficient to sustain a finding that the defendants conspired to obtain firearms through false written statements. The evidence shows that both Ojeda-Avila and Garcia, in response to Ortiz-Loya's request, knowingly and deliberately agreed to place their names upon the ATF forms as the purchasers of the two rifles. Even if Ojeda-Avila and Garcia did not know each other and did not know that each was signing for a weapon, a conspiracy may still be found. *See United States v. Alvarez,* 625 F.2d 1196, 1198 (5th Cir.1980) (en banc), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981); *United States v. Ochoa,* 609 F.2d 198, 202 (5th Cir.1980). Thus, there was clearly an agreement between Ortiz-Loya and each of the other defendants that the latter would sign the ATF forms as purchasers when, in fact, Ortiz-Loya was the true purchaser.

Since we have already held that the evidence is sufficient to support the defendants' convictions of making false statements in the acquisition of firearms and ammunition and of aiding and abetting the unlawful acquisition, we must conclude that the defendants agreed to commit a crime and that at least one of the defendants committed an overt act in furtherance of that agreement. *See Saenz,* 747 F.2d at 937. We also must conclude that the defendants' knowing and deliberate agreement to violate 18 U.S.C. § 922(a)(6) provided the jury with sufficient evidence to determine that the defendants possessed "at least the degree of criminal intent necessary for the underlying substantive offense." *United States v. Feola, supra. Cf. United States v. Schmitt,* 748 F.2d 249

at 253 (specific intent is not an essential element of § 922(a)(6)).

Because we find that the evidence is sufficient to uphold the finding that the defendants conspired to violate 18 U.S.C. § 922(a)(6), we hold that the evidence is sufficient to support the jury's conclusion that the defendants conspired to commit offenses against the United States in violation of 18 U.S.C. § 371. *See eg., United States v. Wilkinson,* 601 F.2d 791, 796 (5th Cir.1979) ("When a conspiracy to violate two statutes is alleged, the jury may find the defendant guilty if they believe beyond a reasonable doubt that he or she conspired to violate either one of the statutes"). *Accord, United States v. Lyons,* 703 F.2d 815, 821 (5th Cir.1983); *United States v. Elam,* 678 F.2d 1234, 1250 (5th Cir.1982). The defendants' convictions under 18 U.S.C. § 371, therefore, must be affirmed.

### II. The Trial Court's Charges

■ Ortiz-Loya and Garcia argue that the district court, in effect, directed a verdict under 18 U.S.C. § 922(a)(6) when it charged the jury that "the subject matter of the false statement was material to the lawfulness of the sale" and that "the alleged false statement described in the indictment did relate to a material fact." We find no merit to this contention.

In *United States v. Gudger,* 472 F.2d 566 (5th Cir.1972), this Court determined that the question of materiality in a § 922(a)(6) case is a question of law for the court. Any misstatement with respect to the name, age and place of residence of the purchaser is clearly a misrepresentation of a material fact. *See United States v. Buck,* 548 F.2d at 876. Moreover, the pattern jury instructions for the District Judges of this Circuit, with respect to false statements to firearm dealers, provides:

The "materiality" of the matter involved in the alleged false statement or identification is not a matter with which you are concerned, but rather is a question for the Court to decide. You are instructed that the alleged false statement or identification described in the indictment did relate to a material fact.

Pattern Jury Instructions (Criminal Cases) at 92 (West 1983). The district judge gave an instruction virtually identical to the pattern instruction.

 Ortiz-Loya and Garcia next assert error in the district court's jury instruction on the element of specific intent to conspire to do illegal acts. Specifically, Garcia asserts that the court erred in refusing to instruct the jury as to the specific intent requirement of the conspiracy violation. Ortiz-Loya complains that because the district court failed to include the instruction on specific intent *within the body* of its instruction on conspiracy, the element of specific intent was not effectively placed before the jury. We find these contentions equally without merit.

This Court has held that a "conviction will not be reversed because of a trial court's failure to give a requested instruction if the charge, taken as a whole, accurately reflects the legal issues and does not allow the jury to convict on an offense not charged in the indictment." *United States v. Garza,* 754 F.2d 1202, 1210 (5th Cir. 1985). Moreover, "[t]he court may decline a requested charge if it has been stated elsewhere in the instructions." *Id. See United States v. Garcia,* 762 F.2d 1222, 1224 (5th Cir.1985).

 To sustain a conviction on a charge of conspiracy to export firearms, in violation of 22 U.S.C. § 2778, the government must prove the same specific intent required in proving the substantive violation itself. *Ingram v. United States,* 360 U.S. 672, 678, 79 S.Ct. 1314, 1319, 3 L.Ed.2d 1503, 1508 (1957); *United States v. Wieschenberg,* 604 F.2d 326, 331 (5th Cir.1979); *United States v. Davis,* 583 F.2d 190, 192 (5th Cir.1978). Because the defendants' requested instructions on specific intent were substantially covered in the district court's instructions, the district court did not err in refusing the defendants' request. *See United States v. Garza,* 754 F.2d at 1210. Moreover, the court did not err in failing to give a specific intent instruction with respect to the charge of conspiracy to acquire firearms through false statements, in viola-

tion of 18 U.S.C. § 922(a)(6), because specific intent is not required on the part of the actors. *See United States v. Schmitt,* 748 F.2d 249, 253 (5th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 2333, 85 L.Ed.2d 850 (1985); *United States v. Harrelson,* 705 F.2d 733, 736 (5th Cir.1983).

### III. Constitutionality of ATF Form 4473

 Finally, Garcia argues that ATF Form 4473 violates the Fifth Amendment to the United States Constitution by improperly advising the purchaser of a firearm as to the law regarding purchases made by one person on behalf of another. Garcia claims that the public is misled because the form does not explain that purchasing a firearm for someone else will possibly result in a violation of the Federal firearms laws.

However, the reverse side of Form 4473 provides:

> The sale or delivery of a firearm by a licensee to an eligible purchaser who is acting as an agent, intermediary, or 'straw purchaser' for someone whom the licensee knows or has reasonable cause to believe is ineligible to purchase a firearm directly, may result in a violation of the Federal firearms laws.

*See* Appendix. Thus, Form 4473 gives the very warning Garcia seeks: that signing the form in place of the true purchaser may result in the violation of the Federal firearms laws. We hold that ATF Form 4473 is valid under the Fifth Amendment.

### Conclusion

In conclusion, we hold that the district court's instructions were appropriate in all respects and that ATF Form 4473 is constitutional under the Fifth Amendment. Moreover, we conclude that the evidence is insufficient to support Ojeda-Avila and Garcia's convictions, under 18 U.S.C. § 2, of aiding and abetting Ortiz-Loya in the attempted exportation of firearms and ammunition in violation of 22 U.S.C. § 2778. We find, however, that the evidence is sufficient to sustain the defendants' convictions in all other respects. We, therefore, reverse Ojeda-Avila and Garcia's convic-

tions on counts 2 and 3, respectively; affirm their convictions on count 1, and on counts 9 and 10, respectively; and affirm Ortiz-Loya's convictions on all counts.

The judgment of the district court is, REVERSED and RENDERED IN PART, and AFFIRMED IN PART.

APPENDIX

Form Approved: OMB No. 1512-0129 (12/31/84)

| DEPARTMENT OF THE TREASURY BUREAU OF ALCOHOL, TOBACCO AND FIREARMS<br>**FIREARMS TRANSACTION RECORD**<br>**PART I—INTRA–STATE OVER–THE–COUNTER** | TRANSFEROR'S<br>TRANSACTION NO. |
|---|---|

NOTE: Prepare in original only. All entries other than signatures must be typed or clearly printed in ink. All signatures on this form must be in ink.

**SECTION A—MUST BE COMPLETED PERSONALLY BY TRANSFEREE (BUYER)** *(See Notice and Instructions on reverse).*

| 1. TRANSFEREE'S *(Buyer's)* NAME *(Last, First, Middle) (Mr., Mrs., Miss)* | 2. HEIGHT | 3. WEIGHT | 4. RACE |
|---|---|---|---|

| 5. RESIDENCE ADDRESS *(No., Street, City, State, Zip code)* | 6. DATE OF BIRTH | 7. PLACE OF BIRTH |
|---|---|---|

8. CERTIFICATION OF TRANSFEREE *(Buyer)*—An untruthful answer may subject you to criminal prosecution. Each question must be answered with a "yes" or a "no" inserted in the box at the right of the question.

| | |
|---|---|
| a. Are you under indictment or information * in any court for a crime punishable by imprisonment for a term exceeding one year? * *A formal accusation of a crime made by a prosecuting attorney, as distinguished from an indictment presented by a grand jury.* | c. Are you a fugitive from justice? |
| | d. Are you an unlawful user of, or addicted to, marijuana, or a depressant, stimulant, or narcotic drug? |
| b. Have you been convicted in any court of a crime punishable by imprisonment for a term exceeding one year? (Note: The actual sentence given by the judge does not matter—a yes answer is necessary if the judge could have given a sentence of more than one year. Also, a "yes" answer is required if a conviction has been discharged, set aside, or dismissed pursuant to an expungement or rehabilitation statute. However, a crime punishable by imprisonment for a term exceeding one year does not include a conviction which has been set aside under the Federal Youth Corrections Act.) | e. Have you ever been adjudicated mentally defective or have you ever been committed to a mental institution? |
| | f. Have you been discharged from the Armed Forces under dishonorable conditions? |
| | g. Are you an alien illegally in the United States? |
| | h. Are you a person who, having been a citizen of the United States, has renounced his citizenship? |

I hereby certify that the answers to the above are true and correct. I understand that a person who answers "Yes" to any of the above questions is prohibited from purchasing and/or possessing a firearm, except as otherwise provided by Federal law. I also understand that the making of any false oral or written statement or the exhibiting of any false or misrepresented identification with respect to this transaction is a crime punishable as a felony.

| TRANSFEREE'S *(Buyer's)* SIGNATURE | DATE |
|---|---|

**SECTION B—TO BE COMPLETED BY TRANSFEROR (SELLER)** *(See Notice and Instructions on reverse.)*

THIS PERSON DESCRIBED IN SECTION A: ☐ IS KNOWN TO ME
☐ HAS IDENTIFIED HIMSELF TO ME IN THE FOLLOWING MANNER

| 9. TYPE OF IDENTIFICATION *(Driver's License, etc. Positive identification is required. A Social Security card is not considered positive identification.)* | 10. NUMBER ON IDENTIFICATION |
|---|---|

On the basis of (1) the statements in Section A; (2) the verification of identity noted in Section B; and (3) the information in the current list of Published Ordinances, it is my belief that it is not unlawful for me to sell, deliver or otherwise dispose of the firearm described below to the person identified in Section A.

| 11. TYPE *(Pistol, Revolver, Rifle, Shotgun, etc.)* | 12. MODEL | 13. CALIBER OR GAUGE | 14. SERIAL NO. |
|---|---|---|---|

| 15. MANUFACTURER *(and importer, if any)* |
|---|

| 16. TRADE/CORPORATE NAME AND ADDRESS OF TRANSFEROR *(Seller)* *(Hand stamp may be used)* | 17. FEDERAL FIREARMS LICENSE NO. |
|---|---|

| 18. TRANSFEROR'S *(Seller's)* SIGNATURE | 19. TRANSFEROR'S TITLE | 20. TRANSACTION DATE |
|---|---|---|

ATF F 4473 (5300.9) PART I (11–81) PREVIOUS EDITIONS ARE OBSOLETE

## PAPERWORK REDUCTION ACT NOTICE

The information required on this form is in accordance with Section 3507 of Public Law 96–511, December 11, 1980. The purpose of the information is to determine the eligibility of the buyer (transferee) to receive firearms under Federal law. The information is subject to inspection by ATF officers. The information on this form is required by 18 U.S.C. 922.

### IMPORTANT NOTICES TO TRANSFEROR (SELLER) AND TRANSFEREE (BUYER)

1. Under 18 U.S.C. Chapter 44 and Title VII of Public Law 90–351, 18 U.S.C. Appendix 1201–1203, as amended, firearms may not be sold to or received by certain persons. The information and certification on this form are designed so that a person licensed under Chapter 44 may determine if he may lawfully sell, deliver or transport a firearm to the person identified in Section A, and to alert the transferee (buyer) of certain restrictions on the receipt and possession of firearms. This form should not be used for sales or transfers where neither person is licensed under 18 U.S.C. Chapter 44.

2. WARNING—The sale or delivery of a firearm by a licensee to an eligible purchaser who is acting as an agent, intermediary, or 'straw purchaser' for someone whom the licensee knows or has reasonable cause to believe is ineligible to purchase a firearm directly, may result in a violation of the Federal firearm laws.

3. The transferee (buyer) of a firearm should be familiar with the provisions of law. Generally, 18 U.S.C. Chapter 44 prohibits the shipment, transportation or receipt in interstate commerce of a firearm by one who is under indictment or information for, or who has been convicted of a crime punishable by imprisonment for a term exceeding one year, by one who is a fugitive from justice, by one who is an unlawful user of, or addicted to marijuana or a depressant, stimulant or narcotic drug, or by one who has been adjudicated mentally defective or who has been committed to a mental institution. In addition, Title VII (18 U.S.C. Appendix 1201–1203) generally makes it unlawful for anyone who has been convicted of a crime punishable by imprisonment for a term exceeding one year, who has been discharged from the Armed Forces under dishonorable conditions, who has been adjudicated mentally incompetent, who, having been a citizen of the United States, has renounced his citizenship, or who is an alien illegally in the United States, to possess a firearm.

### INSTRUCTIONS TO TRANSFEREE (BUYER)

1. The buyer (transferee) of a firearm will, in every instance, personally complete Section A of the form and certify (sign) that the answers are true and correct. If, because of inability of the buyer to read or write, the answers are written by another person, this person and another person will sign as witnesses to the buyer's answers and/or signature.

2. When the transferee (buyer) of a firearm is a corporation, company, association, partnership or other such business entity, an officer authorized to act on behalf of the business will complete and sign Section A of the form and attach a written statement, executed under the penalty of perjury, stating

 (a) that the firearm is being acquired for the use of and will be the property of that business entity, and

 (b) the name and address of that business entity.

## INSTRUCTIONS TO TRANSFEROR (SELLER)

1. Should the buyer's name be illegible the seller shall print the buyer's name above the name printed by the buyer.

2. The transferor (seller) of a firearm will, in every instance complete Section B of the form.

3. If more than one firearm is involved, the identification required by Section B, Items 11 through 15, must be provided for each firearm. The identification of the firearms transferred in a transaction which covers more than one weapon may be on a separate sheet of paper which must be attached to the form covering the transaction.

4. The transferor (seller) of the firearm is responsible for determining the lawfulness of the transaction and for keeping proper records of the transaction. Consequently, the transferor should be familiar with the provisions of the Gun Control Act of 1968 (18 U.S.C. Chapter 44) and Title VII, Unlawful Possession or Receipt of Firearms, (82 Stat. 197), and 27 CFR Part 178 (Commerce in Firearms and Ammunition).

5. Upon completion of the firearm transaction, the transferor (seller) must make a part of his permanent firearms records the Form 4473 (5300.9) Part 1 recording that transaction and any supporting documents. Form 4473 (5300.9) Part 1 and any supporting documents must be filed either chronologically by date of transaction, alphabetically by name of transferee (buyer), or numerically by transaction number if the transferor assigns transaction numbers to Form 4473 (5300.9) Part 1.

6. In addition to completing this record, the licensee shall report any multiple sale or other disposition of pistols or revolvers on ATF F 3310.4 in accordance with 27 CFR 178.126a.

7. Additional forms are available from:

 Bureau of Alcohol, Tobacco and Firearms
 ATF Distribution Center
 3800 S. Four Mile Run Drive
 Arlington, Virginia 22206

### DEFINITIONS

1. *Intra-State Over-the-Counter Transaction*—The sale or other disposition of a firearm by the transferor (seller) to a transferee (buyer), who is a resident of the state in which the transferor's business is located, occurring on the transferor's business premises.

2. *Published Ordinances*—The publication (ATF P 5300.5) containing those State laws and local ordinances relevant to the enforcement of Chapter 44 of Title 18, U.S.C., which is annually published in the Federal Register and distributed to each Federal firearms licensee by the Director, Bureau of Alcohol, Tobacco and Firearms.

ATF F 4473 (5300.9) PART I (11–81)