UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Daniel WILLIAMS and Marion
C. Kiser, Defendants-Appellants.

No. 78–5442.

United States Court of Appeals,
Fifth Circuit.

March 12, 1980.

P. Bruce Kirwan, Federal Public Defender, Atlanta, Ga., for Mitchell.

Al Horn, W. Bruce Maloy, Atlanta, Ga., for Williams.

J. M. Salome, Robert S. Windholz, Atlanta, Ga., for Kiser.

C. Michael Abbott, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before SIMPSON, TJOFLAT and HILL, Circuit Judges.

TJOFLAT, Circuit Judge:

Marion Kiser and Robert Williams appeal their convictions under 21 U.S.C. § 846 (1976) for conspiring to manufacture and possess with intent to distribute methaqualone. Kiser contends that he was entrapped and that the trial court erred in not granting his motion for acquittal. He also claims reversible error in the court's refusal to admit his income tax returns into evidence. Williams contends that the methaqualone used to obtain his conviction had been seized unlawfully by Drug Enforcement Administration (DEA) agents and that he was denied due process by the restrictions the court imposed on his expert's examination of the methaqualone in preparation for trial. We find no error in the trial court's rulings and affirm the convictions.

I

The Government's proof showed considerable involvement on the appellants' part in planning the production and distribution of quaaludes (methaqualone tablets). In a series of meetings they met with two undercover DEA agents, a DEA informant, and others to evolve this plan.

Special Agent Wayne Smith of the DEA testified that he met with Kiser and John Pastis, the Government informant, on January 4, 1978, to discuss the manufacture of quaaludes. Kiser had a quaalude tablet and wanted to know if Smith could produce tablets just like it. If that could be done, Kiser could get methaqualone to Smith and would pay for the tablets as they were delivered. DEA agent Steven Starling, posing as one familiar with the manufacture of methaqualone, had a series of meetings with Kiser and Williams beginning on January 19, 1978. On that date, Starling, Pastis, Wayne Page,[1] and appellants discussed the manufacture and distribution of quaalude tablets in the Atlanta, Georgia area. The discussion took place in a motel room obtained by Kiser. When the meeting began, Kiser turned on the television to protect the conspirators from being overheard. Williams asked Pastis about the cost of producing the tablets and commented that, if they did not become greedy, everyone could make a tidy sum of money. Williams warned that a mere telephone call by one member of the group could result in a conspiracy charge against all. Kiser cautioned that pay telephones should be used if a call were necessary, and everyone agreed.

The appellants participated in further meetings to discuss quaaludes. Williams went with Agent Starling and Pastis to a restaurant on January 21, and they met with Kiser and Page at Kiser's home on January 22. Subsequent telephone conversations and meetings between Starling, Pastis, and Page led to the clandestine laboratory where the methaqualone was being made. A search warrant then issued and approximately sixteen pounds of methaqualone, and eight pounds of ingredients for its manufacture, were discovered.

## II

At the time of the alleged conspiracy Kiser was a proprietor of a trim and upholstery shop. He claims that the Government failed to establish that he was predisposed to commit the offense and, therefore, his conviction cannot stand. The quaalude plan, according to Kiser, originated with Pastis, the Government informant. Kiser was motivated to join in the venture because Pastis was giving him some upholstery business. Pastis and the DEA agents provided him with a list of ingredients for methaqualone.

■ In support of his argument, Kiser cites *United States v. Dickens*, 524 F.2d 441, 444–46 (5th Cir. 1975), *cert. denied*, 425 U.S. 994, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976), which places the burden on the Government, once the issue of entrapment is raised, to prove beyond a reasonable doubt that the defendant was predisposed to commit the charged offense. While *Dickens* does stand for that proposition, it also makes clear that where the Government introduces evidence indicating a defendant's willingness to commit the alleged crime, a jury question is presented. *Id.* at 445. On the record before us, we cannot say that, as a matter of law, Kiser was entrapped.

■ A prosecution cannot be defeated merely because a Government agent has provided the accused with the opportunity or facilities for the commission of the crime. *Id.* at 444. Here, the Government's proof showed that the conspirators met at Kiser's home, at his place of business, and at his motel room. The DEA agents' testimony indicated that Kiser actively participated in these and other meetings. He was concerned initially about the details of the tablet-making process, Record, vol. 2, at 114–15, 140–42, and the security of the operation, *id.* at 29, 35. Kiser had a formula for manufacturing the methaqualone; he could not have relied solely on the one Pastis had furnished because it gave no indication of the relative amounts of the ingredients to be used. *Id.*, vol. 3, at 242–43. It is obvious that the evidence of Kiser's involvement was sufficient to raise a jury issue on the entrapment defense and to overcome a motion for judgment of acquittal. *See United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973).

---

1. Wayne Page was indicted with appellants and pled guilty.

Kiser claims reversible error in the trial court's exclusion from evidence of his income tax returns for 1972–1975. These tax returns corroborated his testimony that he was in the upholstery business at the time of the offense. Because he was in this business, he argues, he had no need to look to trafficking in quaaludes for income. The trial court excluded these tax returns as irrelevant to the issues at trial. Record, vol. 4, at 444. Even if the returns were relevant, the trial judge had broad discretion to exclude them if their probative value was substantially outweighed by their propensity to confuse the issues or mislead the jury. Fed.R.Evid. 403. In our view, whatever probative value lay in the tax returns was miniscule and the potential for mischief was substantial. The trial judge, therefore, acted well within his discretion in excluding them. *See United States v. Johnson*, 558 F.2d 744, 746–47 (5th Cir. 1977), *cert. denied*, 434 U.S. 1065, 98 S.Ct. 1241, 55 L.Ed.2d 766 (1978).

The information disclosed by Kiser's tax returns hardly made it more probable that he had not participated in the quaalude conspiracy. True, they indicated that he was in the upholstery business, but that fact was not in dispute and needed no corroboration. If anything, the returns may have led the jury to speculate that he had a motive to deal in drugs because they showed that his income was modest, at best. The drug scheme never came to fruition, so the failure of the returns to show any profits from it would have been of no moment. The admission of the returns, therefore, may have opened the door to other matters and a potential floodgate of collateral issues. The trial judge was well within his authority to shortcircuit that possibility.

Williams, alone, questions the probable cause underpinning the search warrant; if probable cause was present, he argues, the warrant was still infirm because it failed to describe properly the place to be searched. The district court, however, held that Williams had no standing to challenge the search warrant. Williams did not show that he was on the premises at the time of the contested search and seizure or allege a proprietary or possessory interest in the premises, and he was not charged with an offense requiring possession of the seized evidence at the time of the contested search and seizure. *Brown v. United States*, 411 U.S. 223, 229, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973); *United States v. Evans*, 572 F.2d 455, 486 (5th Cir.), *cert. denied*, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978); *United States v. Foster*, 506 F.2d 444, 445 (5th Cir.) (per curiam), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104 (1975). Nor has he alleged a legitimate property or possessory interest or expectation of privacy sufficient to give Williams standing under *Rakas v. United States*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Thus, Williams cannot be heard to question the constitutionality of the search.

Williams claims reversible error in the trial court's disposition of his motion for an independent laboratory analysis of the methaqualone. Georgia State Crime Lab regulations did not allow Williams's expert to use a primary reference sample in his independent laboratory analysis of the alleged methaqualone, and the court did not require that the expert have access to such a sample. This, Williams contends, amounted to a denial of due process. In disposing of Williams's motion, the district court, pursuant to the parties' stipulation, adopted the set of facts presented on the identical issue in *United States v. Gaultney*, 606 F.2d 540 (5th Cir. 1979).[2] This court has since decided *Gaultney*, and has concluded that, in the factual context now presented, the Georgia State Crime Lab policies regarding primary reference samples are reasonable and do not deprive an accused, like Williams, of due process of law. *Id.* at 546. Williams was not denied his right to an independent analysis of the evidence, a right we recognized in *Barnard v. Henderson*, 514 F.2d 744, 746 (5th Cir. 1975).

---

2. That the alleged controlled substance in *United States v. Gaultney*, 606 F.2d 540 (5th Cir. 1979), was cocaine rather than methaqualone was immaterial to the merits of Williams's motion.

For the reasons stated, the convictions are

AFFIRMED.