**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert BRADSBY, Elmer C. Ballance**
**and Mortimer Fairchild,**
**Defendants–Appellants.**

**No. 79–5532**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.
Unit A.

Oct. 23, 1980.

---

Thomas G. Sharpe, Jr., Brownsville, Tex., for Bradsby.

James R. Gillespie, A Professional Corp., San Antonio, Tex., for Ballance.

Glen A. Barnard, Harlingen, Tex. (court–appointed), for Fairchild.

J. A. Canales, U. S. Atty., James Gough, John Smith, Asst. U. S. Attys., Houston, Tex., Charles Lewis, Asst. U. S. Atty., Brownsville, Tex., for plaintiff–appellee.

Before BROWN, POLITZ and TATE, Circuit Judges.

POLITZ, Circuit Judge:

Robert W. Bradsby, Elmer C. Ballance and Mortimer Fairchild were convicted of three counts of violating 18 U.S.C. § 371, the general conspiracy statute. Specifically, they were found guilty of: (1) conspiring to engage in business as dealers in firearms, as defined in 26 U.S.C. § 5845(a), without paying the special occupational tax required by 26 U.S.C. § 5801 and without registering with the Secretary of Treasury as required by 26 U.S.C. § 5802, in violation of 26 U.S.C. § 5861(a); (2) conspiring to knowingly receive and possess firearms without the registration required by 26 U.S.C. § 5861(d); and (3) conspiring to transfer firearms without paying the transfer tax imposed by 26 U.S.C. § 5811 and without filing a written application form with the Secretary of the Treasury as required by 26 U.S.C. § 5812, in violation of 26 U.S.C. § 5861(e). Each defendant was sentenced to five years imprisonment on each count, with the sentences to run concurrently.

On appeal, Bradsby and Fairchild raise the issue of entrapment. Ballance assigns four errors: (1) insufficient evidence to support his conviction; (2) absence of probable cause for the search and seizure of his home and workshop; (3) failure of the government to elect between the counts in the indictment; and (4) improper admittance of certain evidence.

## Entrapment Defense

Entrapment constitutes a valid defense when the government causes or induces an otherwise innocent person to commit a crime. *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Elorduy*, 612 F.2d 986 (5th Cir. 1980). The visceral issue is whether the defendant had the intent or predisposition to commit the crime, a factual inquiry for jury resolution. *Id.* at 990; *United States v. Russell*, 411 U.S. 423, 433, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). "Where the Government introduces evidence indicating a defendant's willingness to commit the alleged crime, a jury question is presented." *United States v. Williams*, 613 F.2d 560, 562 (5th Cir. 1980).

The charges lodged against Bradsby, Ballance and Fairchild were the result of months of investigation by agents of the Bureau of Alcohol, Tobacco and Firearms (ATF). The stage was set at a meeting in November 1978, attended by ATF agent Fred Wagers, an unindicted co–conspirator named John Johnson and Tibor Dombi, a co–indictee who pled guilty. Dombi showed Wagers a list he had obtained from Fairchild which was an inventory of available firearms. Wagers indicated that he knew some potential buyers.

A few days later Dombi introduced Johnson and Wagers to Bradsby, who made it known that he would be the main contact for the transaction. In late November, Bradsby, Dombi and Johnson met with Wagers and ATF agent George Hopgood who was posing as a representative for a Mexican buyer. Bradsby showed Hopgood the list of available firearms and agreed to deliver 1,000 machine guns to Hopgood, in the United States, upon their reaching an agreement on price and delivery point.

During the next month Hopgood and Bradsby had numerous telephone conversations about the financial arrangements and the situs of delivery. Bradsby agreed to meet Hopgood to show him a sample of the firearms. They scheduled a meeting which was aborted. After trying unsuccessfully

to reach Wagers, Fairchild, acting as Bradsby's partner, spoke with and agreed to meet Hopgood. At that meeting Fairchild called Ballance who brought Fairchild an upper receiver of an M–16 machine gun. Fairchild showed this receiver to Hopgood as a sample of the type firearms they could deliver. During the meeting Bradsby was contacted by telephone and he confirmed that Ballance and Fairchild were working for him. An agreement was reached on the price, $650 per M–16, and the point of delivery, Corpus Christi, Texas. Later that day a search warrant, issued on the basis of an affidavit by Hopgood, was executed at Ballance's residence and workshop, resulting in the seizure of one complete M–16 and thousands of M–16 parts.

Bradsby continued to demonstrate his interest in selling guns to the Mexican buyers in discussions with Wagers and by meeting with Mexican undercover agents.

■ It cannot be gainsaid that the government agents were willing and eager buyers, but they did not initiate the criminal activity of which defendants have been convicted. "A prosecution cannot be defeated merely because a Government agent has provided the accused with the opportunity or facilities for the commission of the crime." *United States v. Williams*, 613 F.2d at 562. The Supreme Court in *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), distinguished between setting a trap for the unwary innocent and setting a trap for the unwary criminal. For the latter, the defense of entrapment provides neither shield nor buckler. The jury obviously found the entrapment defense wanting. We do not find entrapment as a matter of law, and find no reversible error in the jury's apparent factual resolution.

### Adequacy of the Search Warrant

■ Ballance attacks the validity of the search warrant because of factual inaccuracies in the affidavit which served as the basis for issuance of the warrant. "A warrant may be invalidated for misstatements in an affidavit only if the misrepresentations were material and intentional." *Unit-*

ed States v. Lewis*, 621 F.2d 1382, 1389 (5th Cir. 1980). *See also Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and *United States v. Astroff*, 578 F.2d 133 (5th Cir. 1978). The magistrate concluded that the errors were not intentional and not substantial, and that the affidavit was made in good faith. We agree. There is no merit to this assignment of error.

### Sufficiency of the Evidence

Ballance questions the sufficiency of the evidence to support his conviction. The standard for review of conspiracy convictions was recently enunciated by the court en banc in *United States v. Alvarez*, 625 F.2d 1196, 1198 (5th Cir. 1980):

> The government was not required to prove that [Ballance] had knowledge of all the details of the conspiracy or each of its members, provided that prosecution established his knowledge of the essential of the conspiracy. *United States v. Feola*, 420 U.S. 671, 692, 95 S.Ct. 1255, 1267, 43 L.Ed.2d 541 (1975); *Blumenthal v. United States*, 332 U.S. 539, 556–57, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947). Nor can a defendant escape criminal responsibility on the grounds that he did not join the conspiracy until well after its inception. *United States v. Leach*, 613 F.2d 1295, 1299 (5th Cir. 1980); *United States v. Bates*, 600 F.2d 505, 509 (5th Cir. 1979); or because he plays only a minor role in the total scheme. *United States v. Wilson*, 500 F.2d 715, 724 (5th Cir. 1974), *cert. denied*, 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975).

■ The evidence established that Ballance met with Fairchild on the day the search warrant was executed and delivered a package later found to contain an upper receiver assembly of an M–16 machine gun. The search of Ballance's home and workshop produced an M–16 and thousands of M–16 parts. It is obvious that the proof of Ballance's guilt of conspiracy is well within the *Alvarez* parameters.

### Overt Acts Post Arrest

 Ballance argues that he was prejudiced by evidence of overt acts occurring after his arrest. In *United States v. Pearson*, 508 F.2d 595 (5th Cir. 1975), we rejected this argument, relying on the teachings of the Supreme Court in *Hyde v. United States*, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912). One joining an unlawful scheme continues to be responsible until he does some unequivocal act to disavow or defeat the purpose of the scheme. Absent that, he may not claim withdrawal. The burden of proof is on him who claims withdrawal. There is no merit to this assignment of error.

### Election of Counts

Ballance charges that the indictment is multiplicious because each count of the indictment charges him with a violation of 18 U.S.C. § 371. His motion to compel the government to elect a specific count on which to try him was denied. He was sentenced to five years' confinement on each count, with the sentences to run concurrently.

 The indictment is multiplicious; the trial court erred in denying the motion to compel election. In *Braverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942), the Supreme Court was faced with seven counts of an indictment, each charging conspiracy under 18 U.S.C. § 88 (now 18 U.S.C. § 371) to violate a different provision of the Internal Revenue laws with respect to the manufacture, licensing and taxing of distilled spirits. In the case before us we have a three count indictment, each count charging conspiracy to violate a different provision of the National Firearms Act with respect to the registration, licensing and taxing of firearms. In *Braverman*, the Court clearly prohibited such multiple charging when it stated: "Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisions the violation of several statutes rather than one." *Id.* at 53, 63 S.Ct. at 102. All three counts charged Ballance with conspiracy involving the machine guns. There was only one agreement, albeit involving several acts violative of federal law. As per *Braverman*, Ballance may be convicted of only one conspiracy.

 That the sentences imposed on the three counts are to run concurrently is immaterial. "Where separate sentences on two or more counts are impermissible, the error is not cured by the existence of concurrent sentences . . . . Rather, in most instances the proper remedy is to vacate the sentences and remand to the district court for resentencing on one count." *United States v. Mori*, 444 F.2d 240, 245 (5th Cir. 1971).

This resolution is not inconsistent with our holdings in *United States v. Rodriguez*, 612 F.2d 906 (5th Cir. 1980) (en banc), or *United States v. Houltin*, 525 F.2d 943 (5th Cir. 1976), vacated on other grounds sub nom. *Croucher v. United States*, 429 U.S. 1034, 97 S.Ct. 725, 50 L.Ed.2d 745 (1976), and progeny. Those cases dealt with separate specific conspiracy statutes, not the general conspiracy statute before us now and before the courts in *Braverman, Mori* and *United States v. Corral*, 578 F.2d 570 (5th Cir. 1976). This distinction was noted in both *Rodriguez* and *Houltin*. Footnote 16 in *Rodriguez* states: "*Braverman* remains a limitation on the Government's ability to fragment a single conspiracy under *the general conspiracy statute.*" In *Houltin* we said: "Our decision today is fully consistent with . . . *Braverman v. United States* . . . and *United States v. Mori* . . . . Unlike these cases, the present case involves two specific conspiracy statutes." 525 F.2d at 951.

 Only Ballance raised the election issue. Fed.R.Crim.P. 12 requires that the defense of multiplicity must be raised prior to trial or it is waived. We dealt with the issue of a duplicitous indictment in *United States v. Busard*, 524 F.2d 72 (5th Cir. 1975), *cert. denied*, 426 U.S. 948, 96 S.Ct. 3168, 49

L.Ed.2d 1185 (1976), and stated in dicta that such an objection is waived if not made before trial. On closer examination of the question, and considering the issue of multiplicity in light of the indictment and sentencing, we find the position of the Sixth Circuit in *United States v. Rosenbarger*, 536 F.2d 715 (1976), *cert. denied*, 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977), persuasive:

> The argument that one waives his right to object to the imposition of multiple sentences by his failure to object to the multiplicitous nature of an indictment is a *non sequitur*. Rule 12 applies only to objections with regard to the error in the indictment itself; the effect of Rule 12 is that dismissal of a multiplicitous indictment is not required; however, if sentences are imposed on each count of that multiplicitous indictment the defendant is not forced to serve the erroneous sentence because of any waiver.

536 F.2d at 721–722.

All three defendants were jointly indicted and received identical sentences. To vacate Ballance's sentences but affirm the others because of a failure of timely objection, or on the basis of an inherent waiver, would be at best unseemly and at worst a miscarriage of justice. We are unwilling to permit either; rather, we seek the goal of "fairness in administration" in this criminal proceeding, Fed.R.Crim.P. 2, and freely notice a defect "affecting substantial rights" Fed.R. Crim.P. 52(b).

All sentences are VACATED. The matter is REMANDED with instructions that the convictions of each defendant on two counts, at the election of the government, are to be reversed and those counts are to be dismissed. The convictions on the remaining count shall be deemed affirmed and all defendants are to be then resentenced on the remaining single conspiracy count.