**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Sonja Yvette OSUNEGBU,
Defendant-Appellant.**

No. 86–2219.

United States Court of Appeals,
Fifth Circuit.

July 7, 1987.

---

Marjorie A. Meyers, Roland E. Dahlin, III, Federal Public Defender, Houston, Tex., for Osunegbu.

James R. Gough, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for U.S.

Before WISDOM, WILLIAMS, and HILL, Circuit Judges.

WISDOM, Circuit Judge:

This appeal presents several questions, the most significant of which is whether postal inspectors violated the Fourth Amendment rights of the defendant when they conducted a warrantless search of the contents of a private postal box rented by the defendant's husband. We conclude that no Fourth Amendment violation occurred. The defendant had only a limited expectation of privacy in the postal box and its contents and the manager of the post office facility, who had complete and unfettered access to the box and its contents, consented to the search. We also conclude that the evidence was sufficient to support the defendant's convictions. We conclude, however, that the defendant was convicted twice for the same offense and must therefore be resentenced. We therefore affirm in part, reverse in part, and remand the matter to the district court.

## FACTS

In October 1985, after receiving complaints from certain persons that some of their mail was being forwarded to a private postal box, Box 173, at 9504 Richmond Avenue, Houston, Texas, postal inspectors went to the facility, the Private P.O. Box, to investigate. Inspector Pry asked Mrs. Lata Lala, the manager of the facility, to see Postal Service Form 1583, which authorizes a private facility to accept mail on behalf of someone else. Form 1583 indicated that Box 173 was rented to Jones Cal Mayo. Although Form 1583 authorizes the facility to accept mail only for the renter, Mrs. Lala had placed all mail addressed to Box 173 in that box. She later identified Cassey Osunegbu, the husband of the defendant/appellant, Sonja Osunegbu, as the individual who had rented the box. In filling out Form 1583, Mr. Osunegbu had identified himself by showing the manager a driver's license for Jones Cal Mayo. As it turned out, the driver's license number was registered to someone other than Jones Cal Mayo or one of the Osunegbus.

Inspector Pry also asked Mrs. Lala to show him the mail in Box 173, and she complied. Inspector Pry did not have a warrant to search Box 173. Inspector Pry did not open the mail, but rather looked at the address on the letters and parcels. He saw letters addressed to Noel Peterson, Kathy Solleder, John Marston, and Carol Maddox. Some of these were individuals who had registered complaints about misdelivery of their mail. The inspectors were not, however, previously aware of any problems with respect to the mail of Ms. Solleder.

The evidence showed that change of address forms had been filed purporting to be signed by the complainants and changing their addresses to Box 173. The complaining individuals informed the inspectors that they had not authorized their mail to be sent to Box 173. The inspectors also learned that the Honey Bee Company was mailing a black skirt to Ms. Solleder at the Richmond Avenue address.[1] Inspector Pry obtained a description of the package and a duplicate skirt. He also sent a test parcel containing a blue pillow to Ms. Solleder at the Richmond Avenue address.

The inspectors established surveillance at the Richmond Avenue facility. Cassey Osunegbu entered the facility and departed carrying the two packages and several letters. The inspectors followed Osunegbu to his apartment. He entered the apartment complex and parked at a trash dumpster where he discarded the letters. He then drove to apartment 204, where the Osunegbus lived, and entered carrying the two boxes. Inspector Pry testified that the mailing labels were on the packages at that time. Shortly thereafter, Mrs. Osunegbu left the apartment carrying the two boxes, which were empty, and some other trash. She put all the trash into one of the dumpsters.

The inspectors obtained a warrant to search the apartment. In the apartment, the inspectors found the black skirt hanging in a closet. Significantly, the tags and labels from the skirt had been removed. The inspectors also found the blue pillow, a blank change of address card, two keys

1. Apparently, the skirt was purchased by mail order with a stolen credit card.

fitting the postal facility and the box, and a diary in which was written the name and address of one of the people whose mail had been forwarded to Box 173. The inspectors recovered from the dumpsters the letters and the two boxes, without their mailing labels, which were never found.

Mrs. Osunegbu was arrested and questioned by Inspector Pry. Mrs. Osunegbu admitted that she had opened the skirt box and that she had removed the tags and labels from the skirt and placed it in her closet. She also admitted that on several occasions she had called the postal facility to inquire as to whether there was any mail in the box.

Sonja Osunegbu and her husband, Cassey Osunegbu, were charged with one count of conspiracy to steal mail from the United States Postal Service in violation of 18 U.S.C. § 371, and with two counts of receiving, concealing, and unlawfully possessing stolen mail in violation of 18 U.S.C. § 1708. Cassey Osunegbu was also charged with theft of mail, in violation of 18 U.S.C. § 1708. Prior to trial, Mrs. Osunegbu moved to suppress all evidence obtained as a result of the warrantless search of the contents of Box 173. The district court denied this motion, concluding both that Mrs. Osunegbu lacked standing to challenge the search and that even assuming she had standing, the search was not improper because Mrs. Osunegbu had no expectation of privacy in the contents of Box 173.

Mr. and Mrs. Osunegbu were tried together. The jury convicted the defendants on all counts. The court sentenced Mrs. Osunegbu to serve concurrent five year terms on each count, but ordered her to serve only six months of these sentences, suspended the remainder of the prison term, and placed her on five year's supervised probation. Mrs. Osunegbu now appeals.

## DISCUSSION

### 1. Sufficiency of Evidence.

Mrs. Osunegbu first asserts that the evidence was insufficient to support her convictions. In evaluating the sufficiency of the evidence, this court must view the evidence, together with all reasonable inferences, in the light most favorable to the government.[2] This court has stated:

It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.[3]

To obtain a conviction for conspiracy under 18 U.S.C. § 371, the government must prove beyond a reasonable doubt (1) an agreement between two or more persons, (2) to commit a crime, and (3) an overt act committed by one of the conspirators in furtherance of the agreement.[4] Moreover, the government must prove "at least the degree of criminal intent necessary for the substantive offense itself".[5] To obtain a conviction for possession of stolen mail under 18 U.S.C. § 1708 the government must prove beyond a reasonable doubt that (1) the defendant possessed the item described in the indictment, (2) the item had been stolen from the mail, (3) the defendant knew the item was stolen, and (4) the defendant had the specific intent to possess the item unlawfully.[6]

**2.** *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Williams-Hendricks,* 805 F.2d 496, 500 (5th Cir.1986); *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

**3.** *Bell,* 678 F.2d at 549 (footnote omitted); *see also Williams-Hendricks,* 805 F.2d at 500 (quoting *Bell,* 678 F.2d at 549).

**4.** *United States v. Ortiz-Loya,* 777 F.2d 973, 981 (5th Cir.1985).

**5.** *Id.* (quoting *United States v. Feola,* 420 U.S. 671, 686, 95 S.Ct. 1255, 1265, 43 L.Ed.2d 541 (1975)).

**6.** *United States v. Nash,* 649 F.2d 369, 370 (5th Cir.1981); *United States v. Beechum,* 582 F.2d 898, 910 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

Mrs. Osunegbu admits that the evidence was sufficient to convict her husband. But she maintains that the government failed to establish her knowing and willful participation in the criminal activities of her husband. She relies on *United States v. Forrest*[7] as support for her position. Because of her strong reliance on *Forrest,* we consider that case in considerable detail. In *Forrest,* this court overturned the convictions of Maxine Forrest because of insufficient evidence. Mrs. Forrest had been found guilty of two counts of possessing stolen goods. The evidence in that case showed that Mrs. Forrest's husband was the president of a company engaged in a number of activities including truck leasing. Several of the trucks that Mr. Forrest leased had been stolen and he had been involved in those thefts. Mrs. Forrest worked for the business, but had not been involved in the truck leasing aspect of the business except for occasionally taking messages. Mrs. Forrest also had signed, at the direction of her husband, several applications for certificates of title for trucks. Those trucks had been stolen. But there was no evidence that Mrs. Forrest was aware of that fact, and she was not convicted on any charges related to those trucks.

Mrs. Forrest was, however, convicted on charges involving a stolen truck containing stolen eggs. With respect to those convictions, the evidence showed that Mr. Forrest arrived at home with a stolen truck and a stolen trailer containing eggs. Mr. Forrest began selling the eggs to local businessmen but then had to leave town on other business. He left one of his employees, Edwin Hodge, in charge of selling the eggs. A day later, Mr. Forrest telephoned Mrs. Forrest from out of town. Mrs. Forrest told her husband that Hodge was still delivering the eggs. Mr. Forrest told his wife to get in touch with Hodge and have Hodge call him as soon as possible. Mrs. Forrest did as she was told. Later, as directed by Mr. Forrest, Hodge delivered the proceeds of the egg sale, $75 in cash and a check for an undisclosed amount, to

Mrs. Forrest. Based upon this evidence, Mrs. Forrest was convicted. We concluded, however, that the evidence did not establish Mrs. Forrest's knowing and willful participation in the crime. The evidence was consistent with Mrs. Forrest's position that she was unaware of her husband's activities because he had hidden them from her. Indeed, the evidence showed that one of Mr. Forrest's employees had told Mrs. Forrest that the eggs were being sold to offset losses caused by the owner's refusal to pay the freight charges. We concluded that Mrs. Forrest's mere association with her husband and her performing two wholly innocuous tasks at his direction—sending a message to and accepting money from Mr. Hodge—were insufficient to support her convictions.

Mrs. Osunegbu argues that her case is analogous in that the evidence against her merely shows that, at the direction of her husband, she performed several tasks that aided him in the criminal activities which he had hidden from her. We disagree. The evidence showed that Mrs. Osunegbu did three things. First, she made calls to the postal facility to inquire about mail. Second, she opened the skirt box, removed the tags and labels from the skirt, and hung it in her closet. Finally, she threw away the two boxes—from which the mailing labels had been removed. This evidence and other evidence relating to her husband's conduct is inconsistent with the position that Mrs. Osunegbu was unaware of her husband's illegal activities. Mr. Osunegbu certainly would not have his wife call to inquire as to mail for the postal box if he had not wanted her to know what was occurring. He had rented the postal box in a fictitious name and he knew that mail addressed to others would be in the box. And even if she would not find out about these improprieties as a result of the calls, it is reasonable to infer that she would be curious as to what mail her husband was receiving at this box.

The evidence concerning the mailing labels is also incongruous with the position that Mr. Osunegbu was hiding his wrong-

7.   620 F.2d 446 (5th Cir.1980).

doing from his wife. First, the mailing labels addressing the boxes to Kathy Solleder were on the boxes when he entered the apartment. If he were attempting to hide his wrongdoing from her, he would have removed the labels before he entered the apartment. Otherwise, his wife might see the labels. Indeed, even assuming that he removed the labels before she saw the boxes, there is no question that she saw the boxes without the labels; she opened the skirt box, and she threw the two boxes into the trash. The absence of the address labels would be conspicuous and would suggest that something was amiss. Moreover, she admitted that he allowed her to open the skirt box. This is inconsistent with her position because a mail order purchase contains an invoice with the purchaser's name on it. If Mr. Osunegbu had been hiding his wrongdoing he certainly would not have allowed her to open the box thereby risking her finding an invoice with Kathy Solleder's name on it.

Not only is the evidence inconsistent with the position that Mr. Osunegbu was hiding his illegal activities from his wife, but Mrs. Osunegbu's actions also lead to the conclusion that she was well aware of and an active participant in the wrongdoing. Although Mrs. Osunegbu did not take the witness stand, she had previously made a number of admissions to Inspector Pry, and he testified concerning these admissions. Mrs. Osunegbu admitted that she was aware that her husband had rented Box 173. Mrs. Osunegbu further admitted that she had called the postal facility and had asked if there was mail in Box 173 and if so, *for whom.* Even assuming that Mrs. Osunegbu was not aware of the scheme—a highly unlikely conclusion given her inquiries—as a result of these inquiries, a jury could reasonably infer that Mrs. Osunegbu learned that mail was being received in the box that was not addressed to her or to her husband. Indeed, the manager of the facility testified that she had never seen mail for Box 173 addressed to either the Osunegbus or Jones Cal Mayo. That mail for other individuals was constantly arriving at the postal box put Mrs. Osunegbu on notice that something was not right. The manner in which Mrs. Osunegbu handled the skirt, that is, removing the tags and placing the skirt in her closet, and considering the suspicious circumstances concerning the mailing labels on the boxes lead to the logical conclusion that Mrs. Osunegbu was a knowing and willful participant in the mail theft scheme.

We conclude that the evidence was sufficient to allow a reasonable jury to return a guilty verdict against Mrs. Osunegbu.[8]

2. Suppression of Evidence.

Mrs. Osunegbu next contends that the district court erred in denying her motion to suppress the evidence obtained as a result of Inspector Pry's warrantless search of the contents of Box 173. Mrs. Osunegbu argued before the district court that the search violated her rights under the Fourth Amendment. Following a hear-

---

8. *Williams-Hendricks,* 805 F.2d 496.

Mrs. Osunegbu's argument concerning the "mere spouse" jury instruction is related to her argument that the evidence was insufficient to support her convictions because it showed only that she was a mere associate of her husband and had no knowledge of his criminal activity. Mrs. Osunegbu requested the district court to instruct the jury that mere marriage to or association with a person who commits a crime does not support the inference that the spouse or associate is guilty as well. The district court declined to give this instruction, and Mrs. Osunegbu contends that this constitutes reversible error. We disagree. The district court instructed the jury to determine the guilt of each individual separately based on what the evidence showed with respect to that individual. The

court also instructed the jury that mere presence at the scene of a crime does not establish guilt, and that mere association or presence does not establish that an individual was a member of a conspiracy. Although in the interest of preventing second-guessing the district court probably should have given the "mere spouse" instruction, we conclude that the court substantially covered the salient points of that instruction. The court therefore committed no reversible error. *United States v. Grissom,* 645 F.2d 461, 464 (5th Cir.1981). *See also United States v. Gray,* 751 F.2d 733, 735–36 (5th Cir. 1985) holding that in assessing whether a jury has been sufficiently instructed as to defendant's theory of defense, the reviewing court must examine the charge in the light of the full trial including the final arguments of counsel.

ing on the matter, the district court concluded that Mrs. Osunegbu had no standing to challenge the search and that even if she had standing, the government's examination of the contents of Box 173 did not violate Mrs. Osunegbu's reasonable expectation of privacy. We note that the United States Supreme Court and this court have recognized that the question of standing is essentially subsumed within the question whether the area or item searched was one in which the party moving for suppression had a reasonable expectation of privacy.[9] We assume without deciding that Mrs. Osunegbu's Fourth Amendment rights are coextensive with those of her husband who rented the box.[10] We now move directly to the reasonable expectation of privacy issue, the touchstone inquiry in Fourth Amendment analysis. We note that an individual's expectation of privacy, no matter how earnestly held, is reasonable only if it is the kind of expectation that society is prepared to recognize as reasonable.[11]

The Richmond Avenue facility has approximately 400 private postal boxes. The boxes are located along a long hallway. Each box is locked in the front, and only the renter and the manager have keys. The backs of the boxes are open and face an office area. The manager of the facility receives the mail in bulk from the postal service. She sorts the mail in the office and places it into the boxes from the back. Packages too large to fit into the boxes are left in the open area in the office. A notice is then placed in the box informing the customer that he has additional mail.

Mr. Osunegbu rented Box 173 at the facility using the fictitious name Jones Cal Mayo. Box 173 was apparently used solely to receive improperly forwarded mail and mail order items purchased with stolen credit cards. The manager of the facility testified that she did not recall seeing any mail for Box 173 addressed to either Jones Cal Mayo or the Osunegbus.

After receiving complaints from individuals that their mail was being forwarded improperly to Box 173, Postal Inspector Pry went to the facility, informed the manager of the problem, and asked to see the contents of Box 173. She then went to Box 173, removed the contents, and gave them to Inspector Pry. Several of the letters were addressed to individuals who had complained; none were addressed to either Jones Cal Mayo or the Osunegbus.

Mrs. Osunegbu argues that the postal box is the equivalent of a locked locker, a hotel room, or an apartment. The courts have recognized both that renters of such places have a reasonable expectation of privacy protected under the Fourth Amendment and that this expectation of privacy is not destroyed by the fact that the lessor or landlord possesses a key and has maintained a limited right to enter the rental premises for repair, inspection, and similar purposes.[12] Except for such limited purposes, the lessor or landlord generally may not consent to a search of the rented prem-

9. *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980), *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Strmel,* 744 F.2d 1086, 1088 (5th Cir.1984); *United States v. Richards,* 638 F.2d 765, 769 (5th Cir.), *cert. denied,* 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638 (1981).

10. Mrs. Osunegbu did not actually rent the postal box in question, nor, apparently, did she ever visit the postal facility. Mrs. Osunegbu argues that these are distinctions without differences: (1) under Texas community property law, she had a right to the rented postal box equal to that of her husband, Tex.Fam.Code Ann. § 5.01 (Vernon 1975); *Marshall v. Smith,* 199 S.W.2d 555, 556 (Tex.Civ.App.1946), (2) she exhibited a possessory interest in the box by frequently calling to see if mail had arrived. We need not decide whether, and if so, to what degree, her reasonable expectation of privacy in the box was less than that of her husband, because we conclude that the actions of the postal inspectors did not infringe upon the Fourth Amendment rights of either.

11. *Hudson v. Palmer,* 468 U.S. 517, 525, 104 S.Ct. 3194, 3199, 82 L.Ed.2d 393 (1984) (quoting *Katz v. United States,* 389 U.S. 347, 360–61, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)).

12. *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), W. LaFave & J. Israel, *Criminal Procedure* § 3.10, at 355–56 (1984).

ises.[13] According to Mrs. Osunegbu, the authority of the manager of the postal facility is the equivalent of that of a landlord. Although she could enter the open back of the box to deposit mail, thereafter her authority ended. Because the manager had to retrieve the mail from the box for it to be viewed by the inspectors, the subsequent actions of the inspectors violated the Osunegbus' Fourth Amendment rights.

Mrs. Osunegbu's argument has a certain superficial appeal, but it is flawed both as a matter of fact and as a matter of logic. Mrs. Osunegbu concedes that under *United States v. Novello*,[14] no Fourth Amendment violation would have occurred had the postal inspectors examined the outsides of the envelopes addressed to Box 173 before they were placed in the box. In *Novello*, this court ruled that a party has no reasonable expectation of privacy as to the outsides of items stored in a common area of a public warehouse; such items are exposed both to those who have access to that area and to those, including law enforcement officers, who may be given permission to enter that area.[15] In the same way, here the manager sorted the mail in the open office area, and she could have allowed anyone to watch her sort the mail, or to examine thoroughly the mail while it was in the office area.

Mrs. Osunegbu argues, however, that *Novello* is not instructive because the postal inspectors did not examine the mail until after it had been placed in the box. We disagree. Although it is distinguishable, *Novello* provides substantial insight to the Court. The sole purpose for which Mr. Osunegbu rented the box was to receive mail. His use of the box was limited to

opening the front and removing the mail that had been deposited by the manager of the facility.[16] The only items, therefore, that the box protected from invasion by third parties were the same items that under *Novello* could unquestionably have been viewed before they were placed in the box. Moreover, the decisions as to when, and indeed whether,[17] to put items into the box were left solely to the manager without any instructions from the Osunegbus. Any expectation of privacy that the Osunegbus maintained with respect to the contents of the box was minimal.

The removal of items from the box could be significant—if once the items were placed into the box so as to be beyond the control of the manager or of anyone else except the renter. That was not true, however, in the instant case. The back of the box was open and the manager had complete and unfettered access to its contents. Although Mrs. Osunegbu argues that the manager had no authority to remove items from the box, she has pointed to no authority—either in the specific rental contract or otherwise—that supports this position. Given that the box is used solely by the renter to collect mail that the manager has already seen and handled, no legitimate purpose would be served by such a limitation on the authority of the manager.

Moreover, the manner in which private postal facilities are run virtually necessitates that the manager be allowed to reenter a box and remove the contents. If the manager originally placed a small package in the box and later received more mail that would not fit into the box because of the package, she would then have to reenter the box and remove the package, because a

13. *See supra* note 12.

14. 519 F.2d 1078 (5th Cir.1975), *cert. denied*, 423 U.S. 1060, 96 S.Ct. 797, 46 L.Ed.2d 651 (1976); *see also United States v. Piet*, 498 F.2d 178, 181 (7th Cir.), *cert. denied*, 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 664 (1974).

15. Our decision in *Novello* was not affected by the fact that the individual who had rented the facility to the defendant had ensured the defendant that no one other than the persons working on or storing matter in the area would have access. *See* 519 F.2d 1078.

16. It is undisputed that the items which the manager of the facility retrieved from the box for the postal inspector had originally been placed there by the manager and had not been seen by the Osunegbus.

17. As noted, the manager frequently left large items in the open office area. There is no indication that under the rental agreement the manager was required to put into the box all mail that might fit.

package would be easier to keep track of in the office area than loose mail. More fundamentally, and as illustrated by this case, the manager needs to be able to reenter a box, remove the contents, and then examine them if she has reason to believe that she has mistakenly placed into a box mail addressed to someone other than the renter of that box. Under postal regulations, a commercial mail receiving agent such as the Private P.O. Box is required to have a Form 1583, "Application for Delivery of Mail Through Agent", for each *addressee* for whom it is receiving mail.[18] Mail delivered to the agent for such an addressee is considered by the Postal Service to be delivered once it is received by the agent.[19] Mail delivered to the agent for an addressee other than one who has completed a Form 1583 is supposed to be returned to the Postal Service.[20] It is in the interests of both the Postal Service and private postal facilities that the facilities maintain the right to reenter the rented boxes to check for such mail, and Osunegbus did not even attempt, either contractually or otherwise, to prevent the manager from reentering the box for this purpose.

Given the minimal expectation of privacy as to the contents of the box [21] and the manager's unrestricted access to the box,[22] we conclude that the manager could effectively consent to an examination of the contents of the box. The postal inspectors asked to examine the contents of Box 173 because they had solid evidence that it was being used improperly. The manager consented and removed the contents for the inspectors to examine. In these circumstances, we conclude that the search was not violative of the Fourth Amendment rights of the Osunegbus.[23]

### 3. Double Jeopardy.

Mrs. Osunegbu was convicted of two counts of possession of stolen mail.

**18.** USPS Domestic Mail Manual ("DMM") § 153.212 (incorporated by reference, 39 C.F.R. § 111.1 (1986)); *Kuzma v. United States Postal Service,* 798 F.2d 29, 30–31 (2d Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 906, 93 L.Ed.2d 856 (1987).

**19.** DMM § 153.212c.

**20.** DMM § 153.13. Inspector Pry testified at both the suppression hearing and trial that the Postal Service does not consider such mail to be delivered when it is received by the agent. Indeed he characterized such mail as "live mail". Although we have not been able to locate specific authority for this position, Mrs. Osunegbu did not and does not challenge this testimony, and the Domestic Mail Manual provides some tangential support for Inspector Pry's position. *Cf.* DMM § 153.212b.–c.

**21.** Moreover, the use to which the Osunegbus put the box weighs against the conclusion that they maintained any reasonable expectation of privacy. By filing unauthorized forms requesting the Postal Service to forward mail to Box 173, the Osunegbus invited the postal authorities to make inquiries at the facility as to the box and its contents. *See United States v. Whaley,* 779 F.2d 585, 591 & n. 8 (11th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 931, 93 L.Ed.2d 982 (1987), holding that "Where it appears ... that he has engaged in suspicious activity outside the home that would tend to attract the attention of the police, the reasonableness of the person's expectation of privacy [in his home] is affected."

**22.** *Compare Frazier v. Cupp,* 394 U.S. 731, 740, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684 (1969) *and United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) *with Stoner,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856, *and Chapman,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828.

**23.** The Osunegbus had no expectation of privacy in the letters from the box that the inspectors examined. As we have previously noted, an addressee or addressor generally has no expectation of privacy as to the outside of mail. *See United States v. Huie,* 593 F.2d 14 (5th Cir.1979) (per curiam), upholding against Fourth Amendment attack the use of a mail cover. A "mail cover" occurs when the Postal Service makes a record of certain information on mail sent by or to a particular person; *see United States v. DePoli,* 628 F.2d 779, 785–86 (2d Cir.1980). All of the mail taken from Box 173 and examined by the postal inspectors was addressed to and intended for someone other than the Osunegbus or even Jones Cal Mayo. The Osunegbus therefore have no standing to challenge the actions of the postal inspectors with respect to that mail. *See United States v. Jacobsen,* 466 U.S. 109, 122 n. 22, 104 S.Ct. 1652, 1661 n. 22, 80 L.Ed.2d 85 (1984), quoting *Katz,* 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring). Indeed, even if the inspectors had opened the letters, no violation of the *Osunegbus'* Fourth Amendment rights would have occurred. *United States v. Lewis,* 738 F.2d 916, 920 n. 2 (8th Cir.1984), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985).

One count related to the package containing the skirt, the other related to the test package containing the pillow. Mrs. Osunegbu correctly points out that because the two packages were stolen at the same time, only one possession of stolen mail offense occurred.[24] Two convictions for the same offense violate the double jeopardy clause.[25]

■ The government effectively concedes that the second conviction was improper, but argues that the conviction and sentence may stand because the sentences on all counts run concurrently.[26] We must disagree. Even though the sentences run concurrently, Mrs. Osunegby should be resentenced. In *United States v. Bradsby,*[27] a case involving multiple convictions for a single offense, we stated:

> That the sentences imposed on the three counts are to run concurrently is immaterial. "Where separate sentences on two or more counts are impermissible, the error is not cured by the existence of concurrent sentences."[28]

The appropriate remedy in this situation is for this court to vacate Mrs. Osunegbu's sentence and remand the case with instructions for the government to elect one of the two convictions to be reversed and dismissed. The district court should then resentence Mrs. Osunegbu on the conspiracy count and the remaining possession count.[29]

## CONCLUSION

We conclude that the evidence was sufficient to support Mrs. Osunegbu's convictions and that the district court did not err in denying Mrs. Osunegbu's motion to suppress the evidence obtained as a result of the warrantless search of the contents of Box 173. We conclude, however, that Mrs. Osunegbu was improperly convicted twice for the same offense. Mrs. Osunegbu's sentence is therefore vacated. The matter is remanded with instructions that the conviction of Mrs. Osunegbu on one of the possession counts, at the election of the government, is to be reversed and that count is to be dismissed. The convictions on the remaining possession count and the conspiracy count shall be deemed affirmed, and Mrs. Osunegbu shall be resentenced on those counts.

---

24. *United States v. Edmonson,* 659 F.2d 549, 550 (5th Cir.1981); *United States v. Arce,* 633 F.2d 689, 696 (5th Cir.1980), *cert. denied,* 451 U.S. 972, 101 S.Ct. 2051, 68 L.Ed.2d 351 (1981).

25. The double jeopardy clause protects against multiple prosecutions and punishments for the same offense. *Simpson v. United States,* 435 U.S. 6, 11 n. 5, 98 S.Ct. 909, 912 n. 5, 55 L.Ed.2d 70 (1978); *Edmonson,* 659 F.2d at 550.

26. The government also argues that Mrs. Osunegbu waived the right to raise this issue because she did not complain earlier of the multiplicitous nature of the indictment. This argument is meritless, because the error concerns the erroneous sentence, not the indictment itself. *See United States v. Bradsby,* 628 F.2d 901, 906 (5th Cir.1980); *United States v. Mastrangelo,*

733 F.2d 793, 800 (11th Cir.1984); *United States v. Rosenbarger,* 536 F.2d 715, 721–22 (6th Cir. 1976), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977).

27. 628 F.2d 901 (5th Cir.1980).

28. *Id.* at 905 (quoting *United States v. Mori,* 444 F.2d 240, 245 (5th Cir.), *cert. denied,* 404 U.S. 913, 92 S.Ct. 238, 30 L.Ed.2d 187 (1971)). *See also Ray v. United States,* —— U.S. ——, 107 S.Ct. 2093, 95 L.Ed.2d 693 (1987), questioning the correctness of the concurrent sentence doctrine now that 18 U.S.C. § 3013 (1982 ed., Supp. III) provides for a special assessment of $50 on each count.

29. *Bradsby,* 628 F.2d at 906.